THE STATE OF OHIO, APPELLEE, *v.*
HARDIN, APPELLANT.

(No. 83AP-784 — Decided
April 24, 1984.)

*Mr. Michael Miller,* prosecuting attorney, and *Ms. Karen L. Martin,* for appellee.

*Mr. James Kura,* county public defender, and *Ms. Gloria Eyerly,* for appellant.

BROGAN, J. This matter is before us upon defendant-appellant's appeal from a judgment of the trial court after trial to the court finding defendant guilty of possession of criminal tools and sentencing him to a definite term of one year imprisonment in the Columbus Correctional Facility.

Appellant, Mark Hardin, asserts as error that the trial court erred in finding him guilty of possessing criminal tools where the evidence of criminal purpose was insufficient and the trial court inferred appellant's guilt from proof of his inconsistent statements.

The matter was tried to the trial court upon the stipulation that it would consider the preliminary hearing testimony given in the Franklin County Municipal Court on February 22, 1983, and certain other real evidence introduced as joint exhibit No. 1; to wit: a mace case, a crowbar, and vise grips. The indictment charged that the defendant possessed "a pry bar and/or vice [*sic*] grips with purpose to use it criminally."

Mrs. Mae Watkins, of Bexley, Ohio, testified that, on February 11, 1983, at

approximately 5:30 p.m., appellant and another individual came to her front door and knocked. When she responded and opened the door, appellant and his companion inquired if a man named Roland lived there. Watkins stated that she believed they used a last name for the person "Roland" but she does not remember the name. When she indicated that she did not know the man of whom appellant inquired, appellant and his friend went next door to her neighbor's residence. She stated that appellant and the other man approached the front door of her neighbor, and then went around to her back door and began knocking on the door.

Watkins stated that she then called the police and informed them of what she had seen. She told the police that two men had tried to break into her house two weeks previously. While on the phone, she reported to the dispatcher that the two men had left the back door and had again gone to the front of the house. She stated that the police then arrived and apprehended the two men. She identified appellant as one of the men apprehended. She stated that she did not observe either man in possession of a pry bar, vise grips, or any other instruments.

Sergeant R. Sluder of the Bexley Police Department stated that he responded to a citizen's call of suspicious persons in the neighborhood; that he found appellant and his companion at the front door of a neighbor of Watkins; that he asked the men what they were doing in the neighborhood; and that appellant told him he was "looking for a party *that* was somewhere in the Bexley area." (Emphasis added.) Appellant could not provide a name of the person whom he said he was looking for, or a residence address.

Sluder stated that he ran a record check on appellant and discovered he had "traffic order-ins from Columbus Police Department"; that he arrested appellant and, in searching him, he found vise grips in appellant's left front jacket pocket; that he found a crowbar attached to a loop inside the back part of appellant's jacket with the foot of the crowbar in his left rear pocket; and that appellant explained he carried the crowbar for protection because of his small size. Counsel for appellant stipulated that a mace container was also taken from appellant at the time of his arrest.

R.C. 2923.24 provides in pertinent part:

"(A) No person shall possess or have under his control any substance, device, instrument, or article, with purpose to use it criminally.

"(B) Each of the following constitutes prima-facie evidence of criminal purpose:

"* * *

"(3) Possession or control of any substance, device, instrument, or article commonly used for criminal purposes, under circumstances indicating such item is intended for criminal use."

In *State* v. *Anderson* (1981), 1 Ohio App. 3d 62, the Hamilton County Court of Appeals held that the appellant's conviction of possessing criminal tools (two tire irons) was not sustained by the evidence. The defendant and another man were observed by an off-duty police officer standing near an apparently disabled car. One of the men was observed going into an underground parking garage. Soon after, both men emerged from that garage, carrying wheel covers. They placed them in their car and drove away. The car was stopped by two uniformed police officers who observed the wheel covers in the car. One tire iron was near the wheel covers, and the other one was partially under the driver's seat. (*Id.* at 63.) The court of appeals found this evidence insufficient; it raised only a *suspicion* that the tire irons had been used with criminal intent. (*Id.* at 64.)

The Court of Appeals for Hamilton County specifically noted that the off-duty police officer did not see the appellant and his companion in possession of tire irons when they were seen carrying the wheel covers. Also, the court noted that the tire irons were found where one would expect them, *i.e.,* in an automobile. The appellant's conviction for receiving and concealing stolen property was upheld by the court. The court, in fn. 2, noted that the question of conviction of "allied offenses," to wit: possession of criminal tools and receiving and concealing stolen property, need not be addressed as the court reversed the conviction of possession of criminal tools.

We believe the decision in *Anderson, supra,* to be questionable. The off-duty police officer observed the appellant leaving a garage with wheel covers. They were, in fact, stolen. One tire iron was found in the back seat near the wheel covers. Tire irons are commonly used to remove wheel covers from cars. Nonetheless, the court of appeals found the possession of these tire irons merely "suspicious." Perhaps they were influenced by the question they noted of the possible application of the "allied offense" statute.

In the matter *sub judice,* appellant had the crowbar tied to the inside of the back of his jacket. Crowbars are not commonly found on persons in this manner. Appellant also had vise grips on his person. This tool is often used by burglars to break a door lock. Crowbars are also used by burglars. Mace was also found on appellant and is commonly used as a weapon. Burglars often knock on target residences and, when someone inside answers the door, they use the explanation that they are looking for a certain fictitious individual.

The trial judge stated that he considered the totality of the circumstances in finding appellant guilty. He stated that he was impressed by the fact that appellant could not give a name of the person he was looking for, or an address of where he was going to visit. Also, he found it odd that appellant was going to attend a party at 5:30 in the afternoon. He also found that the crowbar was carried by appellant in such a manner that it would not have been accessible as a defensive weapon. He also stated that the "party" explanation was dubious because appellant did not knock on the front door of the residence of Watkins' neighbor before going to the back door. The court found the "tire iron" to be a criminal tool and that appellant possessed the purpose to use it criminally.

The purpose with which a person does an act is determined from the manner in which it is done, the means used, and all the other facts and circumstances in evidence. *State* v. *Huffman* (1936), 131 Ohio St. 27 [5 O.O. 325], paragraph four of the syllabus. See, also, *State* v. *Swiger* (1966), 5 Ohio St. 2d 151, 157 [34 O.O.2d 270]. In *State* v. *Kulig* (1974), 37 Ohio St. 2d 157, the court held that circumstantial evidence relied upon to prove an essential element of a crime must be irreconcilable with any reasonable theory of an accused's innocence in order to support a finding of guilt. The reasonableness of a theory of innocence is a matter for the trier of fact. *State* v. *Graven* (1978), 54 Ohio St. 2d 114 [8 O.O.3d 113].

The trial court could reasonably choose to disbelieve appellant's explanation that he and his companion were looking for a party to attend. The trial court also could reasonably disbelieve appellant's explanation that he carried the crowbar for defensive purposes, in light of the presence of the vise grips.

The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. A reviewing court may not reverse a judgment of conviction in a criminal case in a trial court where the record shows that a verdict of guilty was returned on sufficient

evidence. *State* v. *DeHass* (1967), 10 Ohio St. 2d 230 [39 O.O.2d 366], paragraph two of the syllabus. A reviewing court will not reverse a verdict where there is substantial evidence upon which the trier of fact could reasonably conclude that all elements of an offense have been proven beyond a reasonable doubt. *State* v. *Eley* (1978), 56 Ohio St. 2d 169 [10 O.O.3d 340].

We believe that such evidence was present in the record before us. Accordingly, the assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

McCORMAC, P.J., and NORRIS, J., concur.

BROGAN, J., of the Second Appellate District, sitting by assignment in the Tenth Appellate District.