The judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

NAHRA, P.J., ANN MCMANAMON and WALKER, JJ., concur.

ROBERT D. WALKER, J., retired, of the Hancock County Court of Common Pleas, sitting by assignment.

───────

The STATE of Ohio, Appellee,

v.

WINSTON, Appellant.

[Cite as *State v. Winston* (1991), 71 Ohio App.3d 154.]

Court of Appeals of Ohio,
Miami County.

No. 90CA11.

Decided Feb. 1, 1991.

*Jeffrey M. Welbaum,* Prosecuting Attorney, for appellee.

*Benjamin E. Hiser*, County Public Defender, for appellant.

GRADY, Judge.

Todd M. Winston, appellant, appeals from his conviction for violation of R.C. 2903.11(A)(1), felonious assault. The conviction was based upon the verdict of a jury that Winston knowingly committed serious physical harm to Jennifer Banning.

Winston and Banning lived together in Piqua, Ohio. On the date concerned, August 5, 1989, Banning was in the seventh month of her pregnancy, carrying a child fathered by Winston.

In the afternoon hours of August 5, according to Banning, she and Winston argued about whether she could go out that evening. Banning testified that because of the argument the two decided to split up. Winston denied an argument, but conceded that he did not want Banning to go out of the apartment that evening. Both agreed that it was Banning's intention to go out that evening to a bar with friends, which she later did.

In the late evening hours of August 5, Winston encountered Banning in a bar in Piqua. Over the course of the next hour or two, words were exchanged and the two argued again. According to Banning, Winston became more and more aggressive. Banning and a companion, Khalilah Kimbrough, testified that Winston threatened Banning and her baby. Banning testified that Winston told her that "he hated me and that he was going to kill the baby and me, too." Banning also testified that before they left the bar at the end of the evening Winston told her that he would be waiting for her outside. Kimbrough testified:

"He said, 'I will take care of you and that baby.' He said, 'I'll shoot you in the stomach and kill you and the baby and you can be sure of that.'"

Winston denied that he made any threats against Banning or her baby. Banning and Kimbrough both testified that by the end of the evening Winston was drunk. Winston admitted that through the evening he consumed fifteen glasses of beer and from one-half to a full fifth of whiskey.

Shortly after Winston left the bar Banning left in the company of several friends, including Kimbrough. Banning got into the rear seat of a two-door car parked outside the bar. As she did, Winston ran toward the car, shouting, and reached into the car to pull Banning out. According to Banning, Winston grabbed her by the neck and pulled her from the rear seat of the car and threw her to the ground outside. Both Banning and Kimbrough testified that Winston definitely used a downward motion and force to throw Banning to the ground. After Banning hit the ground Winston fell on her with the full force

of his body. Others then pulled Winston off and helped Banning to her feet. Winston admitted to pulling Banning from the car, but protested that he fell on her by accident.

Banning was examined at a hospital shortly after the accident. No injuries were found to her or to her baby. However, the day following she noted that the fetus was moving far less than it had in the several days before. The following day, Sunday, Banning detected no movement at all. She was examined by a physician, who advised that the fetus was dead. Banning was admitted to a hospital on August 11, and on August 13 labor was induced and she delivered the dead fetus. She was discharged August 15. She gave no additional testimony concerning the effect of these events on her, but did testify that the day following the assault she was sore and that her head hurt with a throbbing pain and soreness for two to three days.

Dr. Lee Lehman, a forensic pathologist and deputy coroner of Montgomery County, testified concerning the injuries to the fetus. Dr. Lehman opined that the fetus was killed as a result of crushing injuries to its head and abdomen as well as a ruptured spleen. Upon being presented with a recitation of the events of August 5, in which Winston pulled Banning from the car and fell on her, Dr. Lehman opined that those events caused the death of the fetus and required its abortion.

Winston testified and denied any intention to harm Banning or her child. He stated that he was concerned that she was drinking and keeping late hours during her pregnancy, and that he only wished her to stay home for her own well-being and that of the child.

After hearing all the evidence, the jury returned a verdict of guilty on the charge of felonious assault. Winston has perfected his appeal, and presents four assignments of error.

I

*Evidence Concerning Fetus*

In his first assignment of error, appellant Winston argues that the trial court erred when it overruled his motion *in limine* prior to trial to exclude evidence concerning the death of the fetus and later admitted testimony during the trial concerning the matter. In his third assignment of error, appellant argues that the trial court erred in failing to grant his motion for new trial, which also argued that the court erred in admitting evidence concerning the death of the fetus. As these two assignments of error concern common issues of fact and law, we shall consider them together.

A motion *in limine* is a request that the court limit or exclude use of evidence which the movant believes to be improper, and is made in advance of the actual presentation of the evidence to the trier of fact, usually prior to trial. The motion asks the court to exclude the evidence unless and until the court is first shown that the material is relevant and proper. If the court denies the motion, no reviewable error results unless the proponent of the evidence later offers it at trial, the opponent then objects, and the court erroneously overrules that objection, or the mere asking of the question creates unfair prejudice. *Caserta v. Allstate Ins. Co.* (1983), 14 Ohio App.3d 167, 14 OBR 185, 470 N.E.2d 430.

Appellant moved the court prior to trial to exclude testimony and evidence concerning the death of the fetus, arguing that the evidence should be excluded pursuant to Evid.R. 403(A) because any probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or of misleading the jury. Appellant also argued that the issue before the court as charged in the indictment is whether he knowingly caused serious physical harm to Banning, not to her fetus. The court denied the motion *in limine*. At trial, appellant objected to questions propounded to Dr. Lehman as to whether the fetus suffered serious physical harm as a result of appellant's acts. The court sustained the objection and limited the testimony in evidence to whether or not there was serious physical harm to Banning, as alleged in the indictment. Appellant did not object to the opinion of Dr. Lehman that the events of August 5 produced the death of the fetus and stipulated that the fetus had died.

We see no error in the orders and determinations of the trial court. The court strictly limited the evidence concerning the death of the fetus to the question of whether Banning suffered serious physical harm. The death of the fetus and the resultant abortion were part of the harm to Banning, and its probative value is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or of misleading the jury.

Appellant's first and third assignments of error are overruled.

## II

### *Weight of the Evidence*

In his second assignment of error appellant argues that the trial court erred when it overruled his motion for directed verdict at the close of the state's case and later at the close of his own evidence. In his fourth assignment of error appellant argues that the verdict of the jury is against

the manifest weight of the evidence. Because these two assignments concern common issues of fact and law, we shall consider them together.

R.C. 2903.11(A)(1) provides that no person shall knowingly cause serious physical harm to another. The indictment in this case specifically alleged that appellant knowingly caused serious physical harm to Jennifer Banning on August 5, 1989.

R.C. 2901.22(B) provides:

"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

R.C. 2901.01(E) provides:

" 'Serious physical harm to persons' means any of the following:

"(1) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

"(2) Any physical harm which carries a substantial risk of death;

"(3) Any physical harm which involves some permanent incapacity, whether partial or total, or which involves some temporary, substantial incapacity;

"(4) Any physical harm which involves some permanent disfigurement, or which involves some temporary, serious disfigurement;

"(5) Any physical harm which involves acute pain of such duration as to result in substantial suffering, or which involves any degree of prolonged or intractable pain."

The trial court instructed the jury on all five subparagraphs of the statute.

In order to establish serious physical harm, the facts need only demonstrate an *attempt* to inflict any one of the results described in R.C. 2901.01(E)(1)–(5). *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132.

The Court of Appeals for Cuyahoga County has held that where the injuries to the victim are serious enough to cause him to seek medical treatment, a jury may reasonably infer that the force exerted on the victim caused serious physical harm as defined by subparagraph (3) of the statute. *State v. Walker* (June 18, 1987), Cuyahoga App. No. 52391, unreported, 1987 WL 13027; *State v. Williams* (Nov. 10, 1983), Cuyahoga App. No. 46599, unreported, 1983 WL 2770; *State v. Griffin* (June 14, 1979), Cuyahoga App. No. 39036, unreported. Certainly, the medical treatment and hospitalization experienced by Banning would satisfy that rule. However, we conclude that the statute requires that a more particularized showing of injury be presented by the evidence.

The trial court instructed the jury:

"A person is defined as every natural person existing or present from birth. Therefore, a viable unborn fetus is not a person as defined under the laws of Ohio. A viable unborn fetus is not a person. You are instructed, however, that a viable unborn fetus is considered to be part of the mother until such time as it is born."

We believe the trial court was correct in this instruction. It had the effect of restricting the jury's attention to the harm to Banning, rather than to her fetus, as well as permitting the jury to weigh the harm to Banning created as a result of the injuries to and death of the otherwise unborn fetus that she carried.

The evidence presented to the jury reasonably supports a conclusion that the harm experienced by Banning was of the kind and quality contemplated by subparagraph (3) of the statute, *i.e.*, any physical harm which involves some permanent incapacity, whether partial or total, or which involves some temporary, substantial incapacity. Banning testified that she was seven months' pregnant and had received regular medical care during her pregnancy. No evidence was presented to support a conclusion that Banning would not, but for the conduct of Winston, have given birth to a live child at the end of the term of her pregnancy. The evidence reasonably supported a conclusion that because of Winston's conduct, Banning was permanently incapacitated from delivering her child in a live birth at the end of that term. The evidence also reasonably supports a conclusion that Banning's five-day hospitalization constituted a temporary, substantial incapacity from performing her other activities. Under either definition, or both, a jury might reasonably find that Banning suffered serious physical harm.

The trial court properly denied appellant's motions for an acquittal. The jury could find from direct and circumstantial evidence that the state had proved each element of the offense beyond a reasonable doubt. Crim.R. 29(A); *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, paragraph two of the syllabus. We should not disturb the jury's verdict when it has support from substantial, credible evidence. *State v. Eley, supra.*

In determining whether a jury verdict in a criminal case is against the manifest weight of the evidence, an appellate court should consider whether the evidence was reasonably credible or fundamentally incredible, contradicted or uncontradicted, reliable or unreliable, and certain or uncertain. A judgment should not be reversed as being against the manifest weight of the evidence where there is substantial evidence on which the trier of the fact could reasonably find that all the elements of the charged offense have been proved beyond a reasonable doubt. *State v. Hardin* (1984), 16 Ohio App.3d 243, 16 OBR 266, 475 N.E.2d 483. It is only where reasonable minds could not

fail to find reasonable doubt that an appellate court properly may reverse the judgment of the trier of fact in a criminal case as being against the manifest weight of the evidence. *Columbus v. Lenear* (1984), 16 Ohio App.3d 466, 16 OBR 548, 476 N.E.2d 1085.

The trier of fact has the primary responsibility for determining the credibility of the witnesses and the relative weight to be given to their testimony. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212. Deferring to that responsibility, we find that there is substantial evidence from which the trier of fact could reasonably conclude that all the elements of felonious assault as charged were proved beyond a reasonable doubt in this case. The jury could reasonably find that Winston acted knowingly: he was aware that Banning was seven months' pregnant and the testimony as to his threats to harm Banning and her child reasonably support a conclusion that he acted knowingly, even intentionally. The evidence also reasonably supports a conclusion that the physical harm inflicted on Banning by Winston involved some permanent incapacity because she was prevented thereby from delivering her child in a live birth at the natural end of the term of her pregnancy, as well as some temporary, substantial incapacity as a result of her hospitalization and abortion. We conclude that the verdict of the jury is not against the manifest weight of the evidence.

For the reasons stated, appellant's second and fourth assignments of error are overruled.

### III

### *Conclusion*

The judgment of the trial court will be affirmed.

*Judgment affirmed.*

FAIN, P.J., and BROGAN, J., concur.