On November 3, 1999, the Oberlin Municipal Court found Christine Hart ("Hart") guilty of menacing by stalking, a violation of R.C. 2903.211(A). Hart appeals her conviction.
 I.
On October 12, 1998, Jackie Mitchell ("Jackie") and her husband David Mitchell ("David") filed a complaint against Hart with the Wellington Police Department. Jackie contacted the police to report that: 1) Hart was driving by and stopping in front of the Mitchell home three to four times a week, 2) Hart had stopped her vehicle in the middle of a road, waved and laughed at Jackie and her children as they were taking a walk, and 3) Hart had driven a vehicle dangerously close behind the Mitchell family. The Wellington Police arrested Hart later the same day.
Before Jackie and David were married Hart and David had a relationship for a year and a half. The relationship ended the week Hart gave birth to their daughter. Hart did have contact with David after the birth of their daughter regarding visitations.
The case was heard on November 3, 1999. The state presented two witnesses, Jackie and David. The defense presented three witnesses including a neighbor, Hart's mother and Hart. The court found Hart guilty of the charge, menacing by stalking. On December 8, 1999, the court sentenced Hart to six months in the Lorain County Jail, $1000 fine, and court costs and then suspended $500 and 5 months on the condition that Hart complete 25 hours of community service and two years of good behavior. Hart served two weeks in jail and was released on December 15, 1999, for time served.
Hart filed a timely appeal with this court.
 II.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT, WHEN IT ENTERED A JUDGMENT OF CONVICTION OF MENACING BY STALKING, WHERE SUCH JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BECAUSE EVIDENCE PRESENTED AT TRIAL DID NOT PROVE BEYOND A REASONABLE DOUBT THAT THE DEFENDANT KNOWINGLY CAUSED THE COMPLAINING WITNESSES MENTAL DISTRESS.
In her first assignment of error, Hart contends that her conviction for menacing by stalking is against the manifest weight of the evidence because insufficient evidence was presented at trial to prove beyond a reasonable doubt that she knowingly caused Jackie to suffer mental distress of any kind. Hart argues that her conviction should be reversed. This court disagrees.
When a defendant asserts that her conviction is against the manifest weight of the evidence,
 an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
R.C. 2903.211 states
 (A) No person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person.
 * * *
(C) As used in this section:
 (1) "Pattern of conduct" means two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents.
 * * * (2) "Mental distress" means any mental illness or condition that involves some temporary substantial incapacity or mental illness or condition that would normally require psychiatric treatment.
 Knowingly We first address Hart's argument that the manifest weight of the evidence did not support that Hart met the "knowing" element of R.C. 2903.211(A). A person acts knowingly when she is aware that her conduct will probably cause a certain result or will probably be of a certain nature. R.C. 2901.22(B). Whether a defendant "knowingly" committed an act is determined from the manner in which the act is done, the means used to commit the act, and all other facts and circumstances in evidence. State v. Hardin (1984), 16 Ohio App.3d 243, 245, citing State v. Huffman
(1936), 131 Ohio St. 27, paragraph four of the syllabus, superceded by statute on other grounds. Hart argues that she did not go out of her way to harass or follow the Mitchells and therefore was not aware her conduct would cause them harm.
The State presented two witnesses, Jackie and David, to establish that Hart was aware of her actions and their possible results. Jackie testified regarding the various incidents with Hart. First, Jackie stated that three or four times a week Hart "stops in front of my home and just sits there." She stated that Hart would remain in front of the house until Jackie acknowledged her presence by coming to the front door. Hart's stopping in front of the Mitchells' house began in March or April of 1998 and continued until she was arrested on October 12, 1998. Jackie testified that Hart never entered her property or honked the horn during her stops. David testified that he saw Hart stop in front of their home on six occasions.
Second, Jackie and David testified that one evening while travelling on State Route 58 Hart, her mother and daughter were in a car behind them. Jackie testified that Hart and her mother were beeping the horn, waving and driving very close to the Mitchells' vehicle. Jackie believed "that driving as close as they were to us was a definite threat to the kids in both cars if something had happened."
Third, Jackie testified that she was taking a walk with her children, travelling north on State Route 58 and she noticed Hart travelling south on State Route 58. Less then fifteen minutes later, when Jackie and her children got to the end of Lincoln Street she saw Hart coming from the "north end of Barker Street and pulled in front of us so we could not cross the street."
Although Hart was not required to testify, once she testified on her own behalf, the court was allowed to draw reasonable inferences from her testimony. Hart testified regarding each of the alleged incidents. She stated that she passed the Mitchells' house ten to twelve times a week while traveling to work. Hart lives in Wellington and is employed at her parent's kennel located in Litchfield. She drives to work and often returns home in the afternoon, during her work shift, to put her daughter down for a nap.
Two possible routes between Hart's home and her job were presented into evidence. Hart's route to work includes travelling south on State Route 58 to Lincoln Street and then onto Barker Street. The alternative route avoids Barker Street by travelling straight on State Route 58 to a stop light at the intersection of State Routes 58 and 18. The Mitchells live on Barker Street and Hart lives about a block away. Hart testified that she drove this same Lincoln-Barker route between her house and work for three and a half years, which would include a period of time before the Mitchells moved into their house on Barker Street. Hart choose this particular route to avoid downtown traffic.
On cross-examination, the State attacked the efficiency of choosing a route to work that did not include a traffic signal. Additionally the State pointed out that Hart's Lincoln-Barker route also contained an additional railroad crossing.
Both Hart and her mother testified regarding the incident on State Route 58. Hart testified that she and her mother were travelling on State Route 58 in her mother's car. She noticed the Mitchells were in the car ahead of them. Hart was driving and she remained about two car lengths behind the Mitchells. Hart's mother corroborated Hart's testimony that she was the only passenger in the car and that Hart did not honk the horn or make hand gestures toward the Mitchells.
Based upon the testimony presented the court could have reasonably inferred that Hart did go out of her way to take the route that would pass the Mitchells' house on Barker Street. The State presented evidence that, if believed, established that Hart was aware of her actions including continually driving by and stopping in front of the Mitchells' house several times a week, driving closely behind the Mitchells on State Route 58 and stopping on Lincoln Street to block Jackie's way home.
 Belief of Physical Harm or Mental Distress Next, Hart contends that the evidence was insufficient to support a finding that Jackie suffered mental distress as a result of Hart's conduct. A showing of actual mental distress is not an element of menacing by stalking. Instead, the prosecution need only show that Hart knowingly caused Jackie to believe she would cause her mental distress or physical harm, which, in our view, was sufficiently accomplished at trial to support Hart's conviction for menacing by stalking.
Hart argues that the State's two witnesses did not present evidence that Jackie experienced temporary incapacity or a mental condition that required psychiatric treatment. We note that expert testimony is not necessary to establish that a victim experienced mental distress as a result of the offender's behavior in order to prove an element of menacing by stalking. State v. Tichon (1995), 102 Ohio App.3d 758, 763. Rather, it is the function of the trier of fact to determine whether a victim suffered mental distress as a result of the offender's behavior.Id. Furthermore, no evidence that psychological treatment has been undertaken is necessary. State v. Smith (1998), 126 Ohio App.3d 193,203.
Jackie testified that Hart did not physically approach her or make threats. However, explicit threats are not an element of menacing by stalking. Id. at 200. Jackie did testify that she was scared for herself and for her children. She was afraid of being home alone with the children when Hart would stop in front of the house, was frozen with fear when she and the children encountered Hart while on their walk and felt threatened by Hart's dangerously close driving on State Route 58. Hart's frequent stops in front of the Mitchell house, the incident on Lincoln Street and State Route 58 left Jackie wondering "where does it end. With everything that goes on in this world today, where does it end * * * does it end with my children and myself getting hurt."
In the instant case, evidence was presented in addition to other incidents that Hart had stopped in front of the Mitchells' house many times for at least six months prior to her arrest on the menacing charge. Even though Hart denies any wrongdoing or threatening behavior, evidence was presented by both Jackie and David that Hart was continuing to engage in a pattern of conduct which knowingly caused another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person.
After reviewing the entire record and weighing the evidence presented by the State and all reasonable inferences, and considering the credibility of the witnesses, we conclude the court did not create a manifest miscarriage of justice in connection with the conviction for menacing by stalking. The evidence does not weigh heavily in favor of Hart and therefore this assignment of error does not present extraordinary circumstances requiring the reversal of the conviction as being against the manifest weight of the evidence.[1]
The first assignment of error is overruled.
 III.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT AND ABUSED ITS DISCRETION, WHEN IT DID NOT ALLOW A WITNESS TO TESTIFY AS TO A RELEVANT MATTER FOR WHICH HE HAD FIRST HAND KNOWLEDGE AND WHICH WOULD ASSIST THE TRIER OF FACTS IN DETERMINATION OF A FACT AT ISSUE.
In her second assignment of error, Hart argues that the trial court should not have excluded oral testimony regarding the traffic patterns of Wellington and the reasonableness of Hart's route to work. Hart asserts that testimony by her neighbor, Doug Dobson, would have shown that Hart's route between home and work was a normally driven route given the traffic patterns of Wellington, therefore supporting the defense that Hart was not aware that her conduct would cause the result alleged by Jackie.
At trial, counsel for Hart attempted to elicit testimony regarding this issue from Dobson. The trial court took judicial notice of the location of streets, lights, railroads and railroad crossings. The court noted that it was not taking notice that Hart's route was the most efficient. Counsel for Hart then stated "I can then ask [Dobson], your Honor, as to what determines it, why he would take certain route rather than another." The court sustained objections to this line of questioning. Counsel for Hart did not make a proffer for the record.
We find that Hart has not preserved this issue for our review. In order for this court to review the propriety of the exclusion of evidence, the party claiming prejudice must proffer into the record the substance of the excluded evidence. State v. Tait (Feb. 5, 1997), Lorain App. No. 96CA006339, unreported, at 5; Evid.R. 103(A)(2). Counsel for Hart did not proffer into the record what Dobson's testimony regarding the particular route would have been. Thus, we cannot determine whether she was prejudiced by the exclusion of the testimony. Accordingly, Hart's second assignment of error is overruled.
Having overruled Hart's assignments of error, we affirm the judgment of the trial court.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Oberlin Municipal Court, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
 ___________________________ BAIRD, Presiding Judge.
WHITMORE, J., CARR, J. CONCUR
[1] We note that while the first assignment of error only states the manifest weight argument, Hart appears to argue insufficiency of the evidence. We have previously noted that "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." State v. Roberts (Sept. 17, 1997), Lorain App. No. 96CA006462, unreported. Having found that Hart's conviction was not against the weight of the evidence, we need not discuss further her challenge to the sufficiency of the evidence.