JOURNAL ENTRY and OPINION.
{¶ 1} Defendant-appellant Andre Johnson ("Johnson") appeals his conviction for carrying a concealed weapon. He moved to suppress evidence of the knife the police found concealed on his person, claiming the police did not have reasonable suspicion to stop him. The trial court disagreed and denied the motion to suppress. The case proceeded to a bench trial, and the trial court found him guilty. This appeal followed.
 {¶ 2} The following facts were adduced at the hearing on Johnson's motion to suppress:
 {¶ 3} On October 20, 2001, Sgt. Connelly and Det. Digregorio were parked in a black unmarked vehicle observing the intersection of Francis Avenue and East 61st Street in Cleveland, to investigate reports of drug activity. The reports suggested the drug activity occurred primarily at a vacant house at the intersection.
 {¶ 4} While Sgt. Connelly and Det. Digregorio were observing the intersection, they noticed a group of approximately ten males standing near the vacant house and near vehicles parked on East 61st Street. Both officers testified that at approximately 10:30 p.m., they observed Johnson standing in the middle of the street, swinging a golf club like a baseball bat. He was standing some distance away from the other people at the scene.
 {¶ 5} The officers had an unobstructed view of Johnson and were parked about 100 feet from the intersection. Both officers testified that Johnson appeared to be disorderly and intoxicated, made loud noises, and appeared to be engaged in an argument with some of the other males. However, the officers could not hear what he was saying. They also testified that they feared he might injure someone with the golf club, and Det. Digregorio testified the golf club could be used as a weapon.
 {¶ 6} However, no one was injured. The police saw the other males enter the cars parked on the street and leave the area. Johnson and another man named Jason DeLoach remained on the street. Despite the fact that any threat of danger had dissipated, the officers approached Johnson to investigate whether he was a threat to himself or anyone else because he appeared to be intoxicated and continued to swing the golf club.
 {¶ 7} The officers identified themselves to Johnson and DeLoach and told Johnson to drop the golf club. He complied. The officers asked him if he had any other weapons and he admitted having a knife in his pocket. They testified that it was not until he admitted possessing a knife that they patted him down and discovered the knife.
 {¶ 8} In contrast, Johnson testified that the police patted him down as they asked him if he had any other weapons. However, it is undisputed that Johnson admitted he had a knife in his back pocket. The officers testified that Johnson told them he had the knife for his own protection because he had been robbed. Johnson denied making that statement. He testified that he told the police officers the knife was a tool he used earlier that day to cut shingles on his job. He further stated that the knife did not fit in his tool belt so he kept it in his pocket. When he took off the tool belt that evening after work, he forgot about the knife in his pocket. Also, a coworker testified that she witnessed Johnson using the knife to cut shingles earlier that day.
 {¶ 9} Johnson also testified that he was swinging the golf club because he had plans to go golfing the next day with some friends. He stated that he did not know how to golf but had gone golfing before. Johnson testified and the police agreed that he did not strike anyone with the golf club. Although he spoke in a loud voice to the other men standing near the house, he was not near them while he was swinging the golf club. It is also undisputed that he never brandished the knife.
 {¶ 10} At the close of testimony, the trial court denied the motion to suppress. The court ruled that the officers had the right to question Johnson as to whether he had any drugs or weapons on him. The court also found that although Johnson could have refused to answer the officers' questions, he voluntarily admitted that he possessed a concealed weapon.
 {¶ 11} Having denied the motion to suppress, the case proceeded to a bench trial. The State called Det. Degregorio, who reiterated much of the same testimony given during the suppression hearing. Johnson then testified on his own behalf. The court found him guilty of carrying a concealed weapon and sentenced him to six months in prison.
 {¶ 12} Johnson appeals raising two assignments of error.
 Motion to Suppress {¶ 13} In his first assignment of error, Johnson argues the trial court should have granted his motion to suppress because the police could not reasonably have suspected he was involved in criminal activity which would justify their search of his person.
 {¶ 14} In reviewing a trial court's ruling on a motion to suppress, a reviewing court must keep in mind that weighing the evidence and determining the credibility of witnesses are functions of the trier of fact. State v. DePew (1988), 38 Ohio St.3d 275, 277; State v. Fanning
(1982), 1 Ohio St.3d 19, 20. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. See, Statev. Curry (1994), 95 Ohio App.3d 93, 96 (Citing State v. Schiebel (1990),55 Ohio St.3d 71). However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard. Id. (Citing State v.Claytor (1993), 85 Ohio App.3d 623, 627).
 {¶ 15} Where a defendant asserts that a seizure was unlawful under the Fourth Amendment, the State bears the burden of proving by a preponderance of the evidence that the seizure was justified. State v.Shindler (1994), 70 Ohio St.3d 54. In State v. Curry, the court explained:
"The propriety of the investigative stop is viewed in light of thetotality of the circumstances. State v. Bobo (1988), 37 Ohio St.3d 177,paragraph one of the syllabus. A review of the totality of thecircumstances is based upon the objective observations and information ofthe officer along with the inferences and deductions made by a trainedlaw enforcement officer that the particular individual is engaged inwrongdoing. United States v. Cortez (1981), 449 U.S. 411, 417-418. Thescope and duration of the investigative stop must be no more thannecessary to effectuate the purpose for which the initial stop was made.United States v. Brignoni-Ponce (1975), 422 U.S. 873. That purpose mustbe such as to protect the officer from the presence of weapons or otherdangerous instruments. Terry, supra, 392 U.S. at 29." Curry, supra,95 Ohio App.3d at 97.
 {¶ 16} In determining when a seizure has occurred, the court explained: "A person is seized under this category when, in view of all the circumstances surrounding the incident, by means of physical force or show of authority a reasonable person would have believed that he was not free to leave or is compelled to respond to questions." State v. Taylor
(1995), 106 Ohio App.3d 741.
 {¶ 17} Here, the trial court found the stop was consensual and that Johnson was free to leave or to refuse to answer their questions. The police drove up to Johnson, identified themselves as police officers and ordered him to drop the golf club. He complied. According to the officers' testimony, they then asked him if he had any other weapons and he voluntarily admitted he had a knife in his pocket. Johnson was not under arrest. The officers did not even pat him down until after he admitted he was carrying a knife. Therefore, the court's finding the stop was consensual is supported by the evidence.
 {¶ 18} Next, we review whether the search was lawful. In Terry v.Ohio, the U.S. Supreme Court stated that in determining whether an investigatory stop is justified, "* * * the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."Terry v. Ohio (1968), 392 U.S. 1, 21-22. "[A]n investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." United States v. Cortez
(1981), 449 U.S. 411, 417. Upon review, it must be determined whether there was an "objective and particularized suspicion that criminal activity was afoot" which was based upon the totality of circumstances.State v. Andrews (1991), 57 Ohio St.3d 86, 87.
 {¶ 19} Although swinging a golf club like a baseball bat in the street at 10:30 p.m. in and of itself was not a crime, it was suspicious behavior. Such behavior, coupled with the fact that Johnson appeared to be intoxicated and was yelling at the people across the street could lead a reasonable police officer to conclude that he may have intended to assault someone. Because an assault is criminal activity, the police had an objective and particularized suspicion that Johnson might be about to commit a crime. Further, once Johnson admitted he had a knife in his pocket, the police had the right to pat him down to determine whether the knife was a threat to their safety. Therefore, the stop and frisk of Johnson was reasonable and lawful. Accordingly, the first assignment or error is overruled.
 Sufficiency of the Evidence {¶ 20} In his second assignment of error, Johnson contends the evidence adduced at trial was insufficient to sustain his conviction for carrying a concealed weapon.
 {¶ 21} In reviewing a claim of insufficient evidence:
"[T]he test is whether after viewing the probative evidence andinferences reasonably drawn therefrom in the light most favorable to theprosecution, any rational trier of fact could have found all the essentialelements of the offense beyond a reasonable doubt."
State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 22} R.C. 2923.12(A) provides that "no person shall knowingly carry or have, concealed on his or her person or concealed ready at hand, any deadly weapon * * *" A deadly weapon is "any instrument * * * capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." In other words, a deadly weapon under the statute is more than just an instrument capable of inflicting death. It must also be either (1) designed or specially adapted for use as a weapon, or (2) possessed, carried, or used as a weapon. Under this definition, "a knife is not presumed to be a deadly weapon, even if it is concealed." Columbus v. Dawson (1986),28 Ohio App.3d 45, 46.
 {¶ 23} Here, it is clear that the knife was capable of inflicting death. The blade was three and one-half inches long. However, the State offered no evidence that the knife was designed or specially adapted for use as a weapon. It was not a switch blade; it was a pocket knife which required both hands to open it before it could be used. The issue thus becomes whether Johnson possessed, carried, or used the knife as a weapon.
 {¶ 24} A defendant's state of mind must be inferred from the totality of the circumstances surrounding the alleged crime. State v. Hardin (1984), 16 Ohio App.3d 243, 245; State v. Guardado (July 31, 1997), Cuyahoga App. No. 71660. In State v. Workman (1992),84 Ohio App.3d 534, 536, the court held that reasonable minds could conclude that the defendant possessed, carried, or used the knife as a weapon where the defendant brandished the knife at the police.
 {¶ 25} In the instant case, the police testified that Johnson told them he was carrying the knife for his own protection because he had been robbed. Thus, there was evidence that he carried the knife for use as a weapon. Although he claimed he carried it for use as a tool to cut shingles, this court must view the evidence in a light most favorable to the prosecution in reviewing a challenge to the sufficiency of the evidence. Accordingly, because there was evidence to support a finding that it was a deadly weapon, the second assignment of error is overruled.
Judgment affirmed.
JOSEPH J. NAHRA, J.* CONCURS; PATRICIA ANN BLACKMON, P.J. DISSENTS(SEE SEPARATE DISSENTING OPINION)
* Sitting by assignment, Judge Joseph J. Nahra, Retired, of the Eighth District Court of Appeals.