DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Williams County Court of Common Pleas that found appellant Earl L. Witt, Jr. guilty of one count of felonious assault and imposed a two-year term of incarceration. For the reasons that follow, this court affirms the judgment of the trial court.
 {¶ 2} In support of his appeal, appellant sets forth the following assignments of error:
 {¶ 3} "1. The trial court erred in failing to instruct the jury on inferior degrees of the offense or lesser included offenses of felonious assault.
 {¶ 4} "2. The trial court erred in overruling defendant's Rule 29 motion as to the count of felonious assault on which the defendant was charged and subsequently convicted.
 {¶ 5} "3. The trial court erred in permitting the prosecuting attorney to make statements in his closing argument inviting the jury to reach its verdict on matters outside the evidence.
 {¶ 6} "4. The trial court erred in allowing the admission of state's exhibits 11 and 12, the medical records of the victim's treatment, without proper testimony at trial regarding those exhibits, in violation of defendant's confrontation right.
 {¶ 7} "5. A juror's failure to disclose material information prejudicial to the defendant during voir dire questioning deprived the defendant of his right to exercise a peremptory challenge against such juror, in violation of the defendant's rights to due process of law and of a trial before a fair and impartial jury.
 {¶ 8} "6. The jury's verdict finding defendant guilty of felonious assault was against the manifest weight of the evidence."
 {¶ 9} The undisputed facts that are relevant to the issues raised on appeal are as follows. On December 17, 2003, appellant was indicted on one count of felonious assault in violation of R.C. 2903.11(A)(1). The charge arose from an incident that occurred on October 27, 2003, that was precipitated by a comment appellant believed the victim had made to appellant's wife a week or two earlier indicating that he had been unfaithful to her. Appellant entered a plea of not guilty to the indictment and the matter was tried to a jury on May 12 and 13, 2004. The jury found appellant guilty and appellant was sentenced to two years imprisonment. It is from that judgment that appellant appeals.
 {¶ 10} In his first assignment of error, appellant asserts that the trial court erred by failing to instruct the jury as to aggravated assault, which is an inferior degree of the offense of felonious assault, or to the lesser included offense of simple assault.
 {¶ 11} According to the Ohio Supreme Court, aggravated assault, pursuant to R.C. 2903.12, is not a lesser included offense of felonious assault, but rather an offense of an "inferior degree * * * since its elements are identical to those of felonious assault, except for the additional mitigating element of serious provocation." State v. Deem
(1988), 40 Ohio St. 3d 205, 210-211. When the defendant presents sufficient evidence of serious provocation, an instruction on aggravated assault must be included. Id. at 211.
 {¶ 12} Appellant herein asserts that he presented evidence of serious provocation. Serious provocation is established in the following manner: "First, an objective standard must be applied to determine whether the alleged provocation is reasonably sufficient to bring on a sudden passion or fit of rage. That is, the provocation must be `sufficient to arouse the passions of an ordinary person beyond the power of his or her control.' If this objective standard is met, the inquiry shifts to a subjective standard, to determine whether the defendant in the particular case `actually was under the influence of sudden passion or in a sudden fit of rage.'" State v. Mack (1998), 82 Ohio St. 3d 198, 201, citingState v. Shane (1992), 63 Ohio St. 3d 630, 634-635.
 {¶ 13} "In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstance that surrounded him at the time." Deem,
supra, at paragraph five of the syllabus. In Deem, the Ohio Supreme Court held, as a matter of law, that a historically stormy relationship and the bumping of the offender's car by the victim's car were insufficient to incite the offender into using deadly force. Deem at 211.
 {¶ 14} Upon review of the record we note the following relevant testimony. The state first presented the testimony of Mark Rowe, the victim. Rowe testified that on the evening of October 27, 2003, he was home, talking on the telephone, when he saw appellant approach his door. Rowe let appellant come in and returned to finish his telephone conversation. As Rowe put the phone down, with his back to appellant, he was struck from behind on the temple. He testified that appellant did not say anything before striking him. He further testified that when appellant hit him again he was knocked unconscious. When he regained consciousness, appellant was standing over him punching him "right and left." Rowe testified that after appellant stopped hitting him he told Rowe "this is what you get for kissing my wife" and left. Rowe stated that he did not hit appellant, make any threatening statements or gestures, or provoke him in any way. Rowe felt numb and was having trouble staying awake so he lay on his couch and slept for what seemed like 45 minutes. When he awoke, he looked at his face in a mirror and immediately called 9-1-1. Rowe was taken to the hospital in Bryan and shortly thereafter transported by life flight to Medical College Hospital in Toledo. He testified that he was admitted to the hospital and released one day later and that he was unable to return to work for two weeks.
 {¶ 15} Officer Tracy Williamson and Sergeant Clifford Weigel, both of the Bryan Police Department, testified as to their involvement with this case. Officer Williamson testified he and another officer responded to Rowe's call at about 9:30 p.m. Officer Williamson stated that, upon entering the house, he noticed Rowe's swollen, bloody face and took several photographs of Rowe's injuries. Sergeant Weigel testified he assisted in the investigation by taking photographs of Rowe's house. He identified photographs he took of the kitchen sink, a rug, an air duct above the stove, two kitchen cabinets and the bathroom sink, all covered in varying amounts of blood. Detective Jeff Arnold testified as to his follow-up investigation of the assault. He stated he interviewed appellant two days after the incident and appellant said he and his wife had been separated for a few weeks prior to the assault and during that time Rowe attempted to date his wife. When the detective asked appellant if he received any injuries on the night in question, appellant first said he did not think so, then said he did not know, and finally claimed he might have been struck on the head. The detective stated that the only visible signs of injury on appellant were bruises and small lacerations on his knuckles. He further testified appellant told him Rowe grabbed him by the shirt and hit him before appellant could begin talking, and that he then tried to defend himself. Appellant also told the detective he struck Rowe four or five times in the face, they both fell to the floor, they got up, talked for a minute or two, shook hands and then he left.
 {¶ 16} Samantha Koch testified her sister Nicki, who is married to appellant, lived with her briefly in October 2003, when Nicki and appellant separated. She further testified she has known Rowe for a long time and works with him. She testified Rowe went to her house in early October to fix her refrigerator and, as he was leaving, appellant drove by. Koch further testified that later that day she heard a voice-mail on her sister's phone in which appellant said he would find out where Rowe lived and "kick his ass."
 {¶ 17} Appellant testified on his own behalf and stated that Rowe, who worked with his wife, had told her things that were not true about appellant's behavior. He stated that on the day of the incident he thought about going to Rowe's house to tell him that he and his wife were working things out and to "appeal to his sense of decency." Appellant further testified that he drove to Rowe's house on the evening of October 27, 2003, and Rowe let him in. He stated that when Rowe finished his phone call he started to tell Rowe that he and his wife were patching things up and that Rowe started waving his hands and speaking in an agitated manner. Appellant testified that Rowe advanced on him and grabbed his shirt and he could not get away because he was afraid to turn his back. Rowe struck him, causing him to hit his head. Appellant stated that he swung back in order to defend himself and hit Rowe several times, and that Rowe started to swing at him again. The two men fell to the ground and appellant was unable to get up. Appellant stated that when they stopped fighting they both stood up, talked briefly and then walked out to appellant's truck.
 {¶ 18} The state called Samantha Koch, Mark Rowe, and Detective Arnold on rebuttal. Koch testified that you can never believe what appellant says and that he is a violent person. Rowe further testified as to the fight and identified the photographs of blood in various locations in his kitchen, living room and bathroom. Detective Arnold testified again that he did not see any signs of injury on appellant during the interview.
 {¶ 19} Under the facts and circumstances of this case, and based on the evidence adduced at trial, we find, first, that appellant never claimed he was under the influence of sudden passion or a fit or rage, instead testifying that he acted in self-defense; second, that appellant did not request an instruction on aggravated assault; and third, as indicated by the testimony summarized above, there was no evidence before the trial court of the mitigating element of "serious provocation" (R.C.2903.12) or of any provocation "sufficient to arouse the passions of an ordinary person beyond the power of his control." See Mack, supra. As such, the trial court did not err in failing to instruct the jury with respect to the offense of aggravated assault.
 {¶ 20} We next consider appellant's assertion that the trial court should have instructed the jury as to simple assault, noting that appellant did in fact request this instruction.
 {¶ 21} A charge on the lesser included offense of assault is required when "the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." State v. Thomas (1988), 40 Ohio St. 3d 213, paragraph two of the syllabus. R.C. 2903.11(A) (1) states that anyone who knowingly causes serious physical harm to another is guilty of felonious assault. R.C.2903.13 states that anyone who knowingly causes or attempts to cause physical harm to another or recklessly causes serious physical harm toanother is guilty of assault. [Emphasis added.] Therefore, in order to have the jury charged on the lesser included offense of assault, the evidence must have failed to establish beyond a reasonable doubt that appellant knowingly caused serious physical harm to the victim, but must have shown that appellant instead, under R.C. 2903.13(A), knowingly caused or attempted to cause physical harm or, under R.C. 2903.13(B), recklessly caused serious physical harm. Appellant argues on appeal that an instruction as to subsection (B) should have been given because the jury might have found, based on appellant's testimony, that he did not knowingly cause damage to Rowe's face, but rather acted recklessly. In response to this argument, we find that the evidence simply does not support appellant's claim that, as he struck Rowe repeatedly in the face and head, he was merely acting recklessly and did not know he was going to cause serious physical harm. There is no evidence in the record to support a claim that appellant acted recklessly, by disregarding a known risk that his conduct was likely to cause a certain result, when he struck Rowe. See R.C. 2901.22(C). Appellant's testimony was that he struck Rowe four or five times in an effort to defend himself. Appellant could see immediately what result his actions were having as Rowe lay bleeding on the floor. Therefore, the trier of fact could not reasonably have found that appellant acted recklessly and committed assault as defined by R.C. 2903.13(B).
 {¶ 22} Accordingly, we find that under no reasonable view of the evidence, even in a light most favorable to the accused, could the jury have found that appellant did not knowingly cause serious physical harm to Rowe. Accordingly, the trial court did not err in failing to instruct the jury on the lesser included offense of assault.
 {¶ 23} Based on the foregoing, appellant's first assignment of error is not well-taken.
 {¶ 24} In his second assignment of error, appellant asserts that the trial court erred in overruling his motion for acquittal pursuant to Crim.R. 29. Appellant made his motion after the close of the state's case and again at the close of all of the evidence.
 {¶ 25} It is well-established that "a court shall not order an entry of judgment of acquittal where the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved." State v. Apanovitch (1987), 33 Ohio St.3d 19, 23;State v. Bridgeman (1978), 55 Ohio St.2d 261. The reviewing court shall consider the evidence in a light most favorable to the appellee. Jacksonv. Virginia (1979), 443 U.S. 307.
 {¶ 26} R.C. 2901.22 states that a person acts "knowingly" when "* * * he is aware that his conduct will probably cause a certain result or willprobably be of a certain nature." [Emphasis added.]
 {¶ 27} The evidence, as summarized above, could support a finding that appellant acted knowingly in that he was aware his conduct would probably be of a certain nature. The state was not required to show that appellant knew the specific nature or extent of the injuries that would result. Further, the evidence, which included photographs of Rowe and his home immediately following the assault, testimony of the officers who responded to the call, Rowe's testimony, and hospital medical records, could support a finding that appellant caused serious physical harm to Rowe. Upon consideration thereof, this court finds that reasonable minds could reach different conclusions as to whether the state had proved beyond a reasonable doubt that appellant knowingly caused serious physical harm to the victim in this case. Accordingly, the trial court did not err by denying appellant's motions for acquittal and appellant's second assignment of error is not well-taken.
 {¶ 28} In his third assignment of error, appellant asserts that the trial court erred by allowing the prosecutor to make a statement in his closing argument which appellant claims invited the jury to consider matters that had not been brought into evidence. Appellant objected to the following statements by the prosecutor during the state's rebuttal closing argument: "With the attacks upon the defendant; I'm sorry, with the attacks upon the victim Mr. Rowe and Samantha Koch here we know that and we can rest assured that if Mr. Rowe had any history of violence you would have heard about it. If Mr. Rowe had any history of imprisonment you would have heard about it." Defense counsel objected and the trial court allowed the comments to stand.
 {¶ 29} Appellant first argues that the foregoing statements gave the jury the idea that there had been an "attack" on witness Samantha Koch. However, appellant does not elaborate on exactly how the idea of an attack on Koch would be prejudicial to his case and this is a far-fetched argument at best. To assume that the jury would take the word "attack" literally is a leap without any basis. It would be clear to anyone having just heard the testimony that the prosecutor was referring to verbal attacks on Rowe and Koch that took place during cross-examination by the defense, as well as during closing argument when defense counsel insinuated that Koch had come forward to testify against appellant only because her sister and appellant were in the midst of a divorce. This argument is without merit.
 {¶ 30} Appellant also argues that the statements amounted to an improper suggestion that the jury "consider the prior criminal record and history of violence of the victim," which were matters not brought into evidence, and asserts that the information was highly inflammatory and prejudicial. We note that there is no evidence in the record that the victim, Mark Rowe, had a prior criminal record or "history of violence." The prosecutor's comment was simply an acknowledgment that if Rowe had a criminal record or history of violence, the defense would have brought that information into evidence. Additionally, the absence of any evidence of violent acts on Rowe's part is relevant to appellant's claim of self-defense. Appellant's arguments are without merit and, accordingly, his third assignment of error is not well-taken.
 {¶ 31} In his fourth assignment of error, appellant asserts that the trial court erred by allowing the admission of the medical records of Rowe's hospital treatment without proper foundation. Appellant argues that admission of the two exhibits, one from the hospital in Bryan and another from Medical College Hospital, constituted a denial of his right to confront all witnesses against him. Appellant implies that the medical records were the only evidence of the severity of Rowe's injuries and, as such, he was prejudiced by the lack of any opportunity to confront or cross-examine witnesses on that issue. Appellant also questions the accuracy of state's Exhibit 11, the record from the hospital in Bryan, because the certification on the document does not state that it is a "true and accurate copy" of the records maintained by the facility.
 {¶ 32} "An appellate court which reviews the trial court's admission or exclusion of evidence must limit its review to whether the lower court abused its discretion." State v. Finnerty (1989), 45 Ohio St.3d 104. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. State v. Jenkins (1984),15 Ohio St.3d 164; State v. Adams (1980), 62 Ohio St.2d 151.
 {¶ 33} Because appellant's only objection to the exhibits at trial was on the basis of his right to confront witnesses against him, his argument as to the "accuracy" of Exhibit 11 is precluded from being raised on appeal. Even if appellant had raised this issue at trial, the argument is without merit. An examination of each set of medical records shows that each was accompanied by a proper certification in compliance with R.C.2317.422(A), which states in relevant part that: "* * * the records, or copies or photographs of the records, of a hospital, * * * in lieu of the testimony in open court of their custodian, person who made them, or person under whose supervision they were made, may be qualified as authentic evidence if any such person endorses thereon his verified certification identifying such records, giving the mode and time of their preparation, and stating that they were prepared in the usual course of the business of the institution * * *."
 {¶ 34} As to appellant's argument that he was denied his right to confront witnesses against him, any possible error in this regard is harmless. First, R.C. 2317.422 permits the admission in evidence of hospital records which are properly certified. Neither the preparer nor the custodian is required to testify and the admission of such records via a sworn written certification, from the custodian of records, preserves a criminal defendant's confrontation rights. State v. Spikes
(1981), 67 Ohio St.2d 405. Appellant also asserts that the hospital records do not establish that the victim suffered "serious physical harm." We disagree, as the hospital records indicate that Rowe suffered multiple facial bone and nasal bone fractures along with fluid retention. Further, serious physical harm may be inferred when a victim's injuries are serious enough to cause him to seek medical treatment. See, e.g., State v. Winston (1991), 71 Ohio App.3d 154. See also, State v.Barnd (1993), 85 Ohio App.3d 254 (hitting the victim in the face with a glass caused "serious physical harm.")
 {¶ 35} Lastly, appellant's claim that the hospital records were the only evidence of the extent of the victim's injuries is without merit. The victim testified as to the extent of his injuries, stating that he suffered a broken nose and two broken eye sockets and that he experienced "excruciating pain." Additionally, several photographs of the victim, taken by the police immediately after the assault showing his cut, bruised and bleeding face, were admitted into evidence.
 {¶ 36} Based on the foregoing, this court finds that the trial court's decision to allow the hospital records into evidence was not an abuse of discretion and, accordingly, appellant's fourth assignment of error is not well-taken.
 {¶ 37} In his fifth assignment of error, appellant asserts that he was denied his right to exercise a peremptory challenge against one of the jurors because the juror did not disclose until the trial had begun that he knew appellant. At the close of the victim's testimony, one of the jurors told the bailiff, outside the presence of the other jurors, that he had just realized he knew appellant from his school days. The juror came to this realization when he heard the victim refer to appellant as "Tony," which is how he knew appellant when they were younger. Prior to the victim's testimony, appellant had been identified only as Earl Witt, Jr., which meant nothing to the juror. During voir dire, the prosecutor asked the panel if anyone knew "the defendant, Earl Witt." This information was brought to the attention of the court and, after questioning the juror and discussing the matter with counsel, the trial court disqualified the juror and excused him. Over defense counsel's objections, the alternate juror was seated and the trial resumed.
 {¶ 38} Crim.R. 24(F) provides that "alternate jurors * * * shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties * * *." Our review of the record indicates that the trial court's decision to seat the alternate juror was a proper application of Crim.R. 24(F). Further, appellant does not indicate exactly how he was prejudiced by this turn of events but simply complains that he was denied the opportunity to exercise a peremptory challenge to excuse the juror because counsel was unaware during voir dire that the juror knew appellant. Appellant states that the juror's failure to disclose material information deprived him of his right to a trial by a fair and impartial jury. However, there is no indication in the record that the jury, once the alternate was seated, was anything but fair and impartial. Based on the foregoing, we find that appellant's fifth assignment of error is not well-taken.
 {¶ 39} In his sixth assignment of error, appellant asserts that the verdict is against the manifest weight of the evidence. Appellant argues, as he did at trial, that he acted in self-defense.
 {¶ 40} Weight of the evidence indicates that the greater amount of credible evidence supports one side of an issue more than the other.State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting Black's Law Dictionary (6 Ed. 1990) 1594. The Ohio Supreme Court has defined the standard applied to determine whether a criminal conviction is against the manifest weight of the evidence:
 {¶ 41} "When a court of appeals reverses a judgment of a trial court on the
 {¶ 42} basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the fact finder's resolution of the conflicting testimony." Id. at 388, citing Tibbs v. Florida (1982), 457 U.S. 21, 42.
 {¶ 43} To determine whether this is an exceptional case where the evidence weighs heavily against conviction, an appellate court must review the record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id., quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175. Only if we conclude that the trier of fact clearly lost its way in resolving conflicts in evidence and created a manifest miscarriage of justice will we reverse the conviction and order a new trial. Id.
 {¶ 44} The state presented undisputed evidence that appellant struck Rowe in the face repeatedly with his fists, causing Rowe to suffer a broken nose and two broken eye sockets, along with other cuts and bruises. As to the affirmative defense of self-defense, appellant testified that he went to Rowe's house unannounced to confront Rowe about perceived interference in appellant's marriage. Rowe invited appellant into his house while he ended a telephone conversation. The state presented evidence that as soon as Rowe hung up the phone, while his back was turned, appellant began punching him. Appellant did not receive any injuries. The trial court instructed the jury on self-defense, an essential element of which is that the defendant is not at fault in creating the situation that gave rise to the charges and that the defendant had reasonable grounds to believe that he was in immediate danger of bodily harm and that his only means of protecting himself was by the use of deadly force. It is clear that the jury did not find appellant's selfdefense claim to be credible.
 {¶ 45} We have thoroughly reviewed the evidence in this case and find no indication that the trier of fact lost its way or created a manifest miscarriage of justice by finding appellant guilty of felonious assault. Accordingly, appellant's sixth assignment of error is not well-taken.
 {¶ 46} On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Williams County Court of Common Pleas is affirmed. Pursuant to App.R. 24, costs of this appeal are assessed to appellant.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Singer, P.J., Parish, J., concur.