DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal is from the June 10, 2005 judgment of the Wood County Court of Common Pleas, which sentenced appellant, John Henricks, following his conviction of two counts of felonious assault, violations of R.C. 2903.11(A)(2). Upon consideration of the assignments of error, we affirm the decision of the lower court. Appellant asserts the following assignments of error on appeal:
 {¶ 2} "ASSIGNMENT OF ERROR NUMBER ONE: THE VERDICT WAS UNSUPPORTED BY AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 3} "ASSIGNMENT OF ERROR NUMBER TWO: COUNSEL WAS INEFFECTIVE FOR FAILING TO REQUEST AN INSTRUCTION ON THE OFFENSE OF AGGRAVATED ASSAULT R.C. 2903.12 [sic]."
 {¶ 4} Appellant was charged in two separate indictments with two counts of felonious assault, violations of R.C.2903.11(A)(2), arising out two separate domestic violence incidents. The prosecution presented the following evidence to establish that appellant caused or attempted to cause physical harm to the victim, Michelle Henricks.
 {¶ 5} The victim testified that throughout the day on January 12, 2004, she and appellant, her husband, argued about financial problems. They both had been drinking. During an argument in the early evening, appellant came over to where the victim was sitting and started yelling in the victim's face. She pushed appellant and he fell back on a futon. The argument escalated into more pushing, shoving, and wrestling. When the victim could not get free, she bit appellant on the arm. Appellant then left the room but the verbal argument continued. Eventually, the argument ceased and the victim resumed watching television while seated on a couch. The couch backed up to a wall, but the victim sat at the right end of the couch near a doorway to the kitchen. Suddenly, the victim's head was hit from behind. She turned and saw appellant holding his walking stick or cane in his left hand. Appellant normally stored his cane in the closet or back porch and used it for mushroom hunting, but had been using it recently because of an injury and stored it in various places. Appellant dropped the cane and left the room. As the victim rose, she became dizzy and lost her balance. She lay on the floor for a while and then tried to get up again. She fell a second time and appellant returned. They began to argue about what appellant had done. At trial, the victim testified that appellant had also kicked her with his bare foot on the right side of her face near her eye while she was lying on the floor. She had not told this fact to anyone prior to trial.
 {¶ 6} Appellant helped the victim up and compelled her to take a shower to clean up the blood. After he helped her into the shower, appellant left the room. The police arrived just as the victim had finished the shower. She told them that she had bad allergies and later that she had fallen down and hit a broom because she did not want her husband to get into trouble. After the officers looked at her head, they called an ambulance. She repeated the lie to the emergency personnel and initially to the hospital staff. Eventually, she told the hospital staff, while an officer was present, what had happened.
 {¶ 7} Appellant returned to their apartment after he was released from jail and their relationship remained tense and unpredictable. Appellant was not happy that the victim was being compelled to testify before a grand jury about the events of that night and was anxious about what she was going to say.
 {¶ 8} On the evening of May 13, 2004, the couple again began arguing. Appellant had been drinking while the victim was working. The victim was in the laundry room and she could hear appellant coming from the living room toward the back porch where she was located. When he came onto the porch, she elbowed and kicked him. Appellant pinned her between a cabinet and the dryer. He had made a fist and was threatening to hit her. She told him to go away because she was not going to allow him to hit her again and then she hit him. Appellant fell and the victim moved to the living room to get away. She did not leave the house because she thought that would make the situation worse. As she was walking toward the living room, she was struck on the head from behind. She turned and saw appellant standing ten-to-fifteen feet away in the kitchen and a skillet with a broken handle lying on the floor behind her. She picked up the skillet and threw it at appellant. They threw it back and forth a few times. Then the police arrived. Both of them were taken to the hospital. She received stitches and, after the incident, suffered for a month with severe headaches and trouble with her balance. She missed several days of work immediately after the injury. Appellant had a black eye.
 {¶ 9} After this incident, the victim did not see appellant. She spoke to him a few times on the telephone and received a few letters from him. Appellant addressed his letters to his daughter to get around the protection order. Appellant wrote to the victim telling her to get rid of the skillet and to write to him so that they could work out the details about what happened that night to keep both of them out of trouble. He wrote her again telling her to retract her statements made that night by saying that she had been drunk. He advised her not to testify before the grand jury and simply to say that she could not remember what happened. The victim testified that she was testifying against her husband solely because she had been subpoenaed.
 {¶ 10} A forensic scientist for the Bureau of Criminal Investigation testified that he examined the cane and found six bloodstains on the cane. He did further testing to learn that the bloodstains were either human blood, higher primate, or ferret. Since there was no evidence that either of the animals were present, the scientist determined that the blood was human blood. A DNA sample was taken, but no request was made to match the DNA to a specific person.
 {¶ 11} Appellant's neighbors testified that they live in the adjoining duplex apartment and heard the victim and appellant fighting on January 12, 2004, from 6:30 p.m. until after 9:00 p.m. It was a common occurrence, and they tried to ignore it. When the neighbors heard the sounds of furniture being thrown and wrestling, they eavesdropped at the common wall. The wife testified that she heard the victim state that appellant hit her. The husband heard the sounds of hitting. They then decided to call the police.
 {¶ 12} On May 13, 2004, the wife recalled that she heard fighting again. After about an hour and a half, she heard a thud against the common wall of her laundry area where she was working. She then heard the victim state four times that appellant was not going to beat her that night. Appellant was telling her to be quiet before the neighbors called the police. The husband could only recall that his wife told him that she was going to call the police again.
 {¶ 13} A Haskins Police Department officer testified that he responded to the call to the home of the victim and appellant at 9:30 p.m. on January 12, 2004. He saw the lights on and what appeared to be a television. When he approached the house, everything went dark. He knocked on the front door, front window, rear door, and rear window. He finally called out that he was a police officer and that he knew someone was home and that he was not going to leave until someone answered the door. Appellant then opened the door. The officer explained why he was there and told appellant that he needed to see the victim. When the couple was not cooperative, he called for a backup officer to help him.
 {¶ 14} Both officers testified that the victim was dressed in a robe with a towel wrapped around her head. They immediately observed that the right side of the victim's face was swollen, she had a black eye, and that she had scratches or abrasions around her neck and chest that looked like she had been strangled. Her shoulder blades were bruised. Appellant did not appear to have any injuries that night. At first, the victim said that nothing was wrong and that she merely had bad allergies. Eventually, the victim admitted to a scuffle but still repeated that nothing was wrong. The officers saw a very large blood stain on the carpet, covering a two-and-a-half-by-three-feet area. Appellant also admitted to a little scuffle. When they asked about the stain, the victim stated that she had fallen after appellant hit her with the sweeper or something. The officer saw a cane with what appeared to be bloodstains on it lying partially in the area where the victim had fallen.
 {¶ 15} The officers also noticed that the victim kept her hand on the towel on her head. He then noticed red stains on the towel around her hands. One of the officers asked the victim how she had injured her head and she did not answer. He then asked her to remove the towel. After seeing the wound, he determined that she needed to go to the hospital. While waiting for the EMS, appellant was arrested for felonious assault. The victim did not talk to the officers about the events of the evening because all she could talk about was how much the wound was bleeding. The officers took photographs of the scene and the victim, which were admitted into evidence.
 {¶ 16} An EMS paramedic testified that she transported the victim to the hospital on January 12, 2004. The victim initially said that she had tripped when sweeping. In route to the hospital, the victim stated that her husband had hit her in the face with a piece of the vacuum cleaner causing her to fall backward and strike her head against the wall. When the paramedic arrived at the hospital, she conveyed to the nurse and attending physician what the victim had said.
 {¶ 17} At the hospital, the victim told one of the officers that she could not remember what happened and that she did not want to get her husband into trouble. After the officer told the victim that she could have died from her injuries, she began to cry and told him that after she had been struck in the back of the head, she tried to walk to the bathroom, but passed out on the floor. She thought she had been hit with the sweeper. When she woke up, she started screaming at appellant and he put his hands around her neck and told her to be quiet. One of the officers returned to the victim's home on January 14, 2004, to reenact the events of January 12. He found that her version of the events was feasible.
 {¶ 18} An emergency room physician testified that he treated the victim on January 12, 2004. The victim had a bleeding head wound, swelling and bruising around the eye, and a bruise on her forearm. She was also very intoxicated, with a blood alcohol level four times the legal limit, even though she did not appear to be that intoxicated. Her head wound was a serious one-and-one-half-centimeter gap with active bleeding and hematoma. The wound needed to be treated to stop the bleeding or the victim would have died. The victim initially said that she had been thrown down the stairs and hit a broom. Eventually she told the doctor that her husband had assaulted her. Her final statement was more appropriate as the doctor believed that the victim's blunt head trauma had to have been caused by being hit with a hard object. While the injury could have been caused from a fall down the stairs, the only injuries the victim had were on her head. At trial, the doctor was shown the cane and testified that it could have caused the victim's head injury.
 {¶ 19} On May 13, 2004, the same officer was called to the premises again because of a domestic dispute. As he approached the home, he could hear the victim and appellant arguing from 15 feet away. He recognized the voices of the victim and appellant. When a knock on the front door was ignored, he went to the back door. He could hear arguing and pounded on the window. Eventually, the victim moved the curtains and seemed shocked to see the officer there. She allowed the officer into the home. The victim had a medium cut on her forehead. She had a large cut on the back of her head. Her shirt was ripped. Her face was bruised. Appellant's left eye was puffy and black. The white portion of his eye was bright red. He stated that his wife injured him when she attacked him. The victim stated only that they had been fighting over finances. Both parties were taken to the hospital.
 {¶ 20} On the way to the hospital, the victim stated that they had been fighting over finances because appellant stole money out of her purse. She had punched him in the eye with her elbow and kicked him. Appellant became enraged and picked up a steel skillet and struck the victim in the head several times.
 {¶ 21} Appellant was very intoxicated that night and became very belligerent at the hospital whenever the officer came near him. He kept twisting his hands in the handcuffs and causing himself great pain. At one point, he threw his legs and arms up and arched his back, screaming something about chest pains. During that time, appellant's blood alcohol level was taken and it was discovered that it was at an extremely unsafe level.
 {¶ 22} An emergency room nurse testified that on January 12, 2004, the victim initially said that she had fallen, then that she had gotten in an argument with her spouse and fell, and then that her husband threw a sweeper at her. After a police officer arrived and asked the victim to tell the entire story, she stated that her husband had struck her with a cane.
 {¶ 23} Another emergency room physician testified that he treated the victim on May 13, 2004. He testified that the victim had a two-and-one-half-centimeter cut to the right side of the back of her head. While the cut was not life threatening, staples were required to close the wound. The victim told the doctor that she had been hit with a frying pan. The doctor also testified that it would be expected that the victim would suffer pain for several days and was also possible that she could have headaches and disorientation as a result of the injury. He also noted that she had older bruises on her face and that she was very emotional that night.
 {¶ 24} The doctor treated appellant as well. The doctor classified appellant's injuries as minor: a slightly swollen nose, a black eye, and a subconjunctival hemorrhage. The doctor could tell that appellant had been drinking; the doctor smelled alcohol and appellant was belligerent. Appellant told the doctor that his injuries had been caused by his wife slapping him in the face. When an officer came into the room, appellant loudly complained of chest pains. Testing was conducted, but nothing was wrong. Appellant later admitted that he had been feigning chest pains because the officer was present.
 {¶ 25} In his first assignment of error, appellant argues that his conviction was contrary to the manifest weight of the evidence.
 {¶ 26} Even if there is sufficient evidence to support the verdict, the appellate court may find that the verdict is contrary to the weight of the evidence. State v. Thompkins
(1997), 78 Ohio St.3d 380, 386-390. A challenge to the weight of the evidence questions whether the greater amount of credible evidence was admitted to support the conviction than not. Id. at 387, and State v. Smith (1997), 80 Ohio St. 3d 89, 114, certiorari denied (1998), 523 U.S. 1125. A reviewing court will grant a new trial only in an exceptional case where the evidence weighs heavily against conviction. Thompkins, supra. Factors which the appellate court considers are "* * * whether the evidence was reasonably credible or fundamentally incredible, contradicted or uncontradicted, reliable or unreliable, and certain or uncertain." State v. Winston (1991),71 Ohio App.3d 154, 160. The standard for determining whether a conviction is against the manifest weight of the evidence is whether the appellate court finds that the trier of fact clearly "lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."Thompkins, supra at 387 quoting State v. Martin (1983),20 Ohio App.3d 172, 175.
 {¶ 27} Appellant argues in this case that there was little evidence to support a finding as to Count 1 that appellant used a cane to hit the victim especially in light of the numerous stories that the victim told. He also argues that his use of the cane was not logical in light of all of the other testimony regarding the events of the evening (that the victim was the primary physical aggressor; that she told everyone a different story about what happened; and that the victim was nearly lethally intoxicated).
 {¶ 28} Appellant argues as to the second count that there was little evidence to establish that appellant knowingly caused physical harm to the victim during the second domestic violence incident because the victim only suffered a two-and-one-half-centimeter laceration to the back of her head. Appellant argues that this wound is insufficient to meet the definition of physical harm under R.C. 2901.01. Furthermore, he argues that the victim was the primary physical aggressor.
 {¶ 29} Common to both of these arguments is the claim that the victim initiated the physical fight. However, in light of all of the evidence, we find that the jury had ample evidence before it to conclude that the victim was defending herself against appellant's aggressive behavior. Such a conclusion was reasonable in light of the evidence presented.
 {¶ 30} Also raised was the issue of the victim's various accounts of what happened during both incidents. Again, it was reasonable for the jury to find that the victim's statements were motivated by a desire to keep her husband out of trouble. While her statements changed, the change was in the direction of greater disclosure and implicated her husband only after she was separated from him. Therefore, we find that the jury had a basis for finding that the victim's testimony was credible.
 {¶ 31} Finally, as to the issue of whether the manifest weight of the evidence supported a finding that being hit with a skillet caused serious physical harm, we find that the jury did not lose its way in determining that being hit with a skillet caused serious physical harm.
 {¶ 32} R.C. 2901.01(5) defines "serious physical harm to persons" as any of the following: (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment; (b) Any physical harm that carries a substantial risk of death; (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity; (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement; (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
 {¶ 33} In cases involving a challenge to the sufficiency of the evidence, courts have concluded that if the jury may infer from the fact that the victim sought medical treatment the force used caused serious physical harm. State v. Witt, 6th Dist. No. WM0-4-007, 2005-Ohio-1379, ¶ 34 citing State v. Winston (1991),71 Ohio App.3d 154, 159. In the case before us, the issue is whether the jury's finding was contrary to the manifest weight of the evidence.
 {¶ 34} While the laceration that the victim received was small, it does not mean that the force appellant used in hitting the victim with the skillet was minimal. The victim testified that she suffered severe headaches and disorientation after the injury. The emergency room physician testified that such symptoms were reasonable and that the wound would be quite painful for several days. Based upon this evidence, we find that there was substantial evidence upon which the jury could find that appellant caused serious physical harm to the victim.
 {¶ 35} Appellant's first assignment of error is not well-taken.
 {¶ 36} In his second assignment of error, appellant argues that his trial counsel rendered ineffective assistance by failing to request that the trial court instruct the jury regarding the lesser-included offense of aggravated assault.
 {¶ 37} The right to the assistance of counsel is guaranteed under the Article 1, Sec. 10 of the Ohio Constitution and theSixth Amendment to the United States Constitution. Because appointed counsel is presumed to be competent, appellant bears the burden of proving that his counsel rendered ineffective assistance. Strickland v. Washington (1984), 466 U.S. 668, 687, and State v. Lott (1990), 51 Ohio St.3d 160, 174, certiorari denied (1990), 498 U.S. 1017. To meet this burden of proof, appellant must show that: (1) there was a substantial violation of the attorney's duty to his client, and (2) the attorney's actions or breach of duty prejudiced the defense. Strickland,
supra at 687-689 and State v. Smith (1985), 17 Ohio St.3d 98,100. This court will find prejudice if there is a reasonable probability that a different result would have occurred in the case if the attorney had not violated his duty to his client.State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus, certiorari denied (1990), 497 U.S. 1011, and Statev. Noling, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 108, certiorari denied (2003), 539 U.S. 907.
 {¶ 38} The elements of aggravated assault are identical to the elements of felonious assault, except for the addition of the mitigating element of serious provocation. State v. Deem
(1988), 40 Ohio St.3d 205, at paragraph four of the syllabus. If a defendant produces sufficient evidence of serious provocation during trial, the court must instruct the jury on aggravated assault. Id. While appellant's counsel requested a jury instruction for assault, she did not request an instruction for the lesser included offense of aggravated assault.
 {¶ 39} Upon a review of the evidence presented in this case, we find that appellant's trial counsel rendered effective assistance of counsel because an instruction on the lesser-included offense of aggravated assault was not warranted. While evidence was presented that the victim hit appellant first, the evidence only supports a finding that the victim's blows were made in self-defense. Therefore, we find that appointed counsel did not breach her duty to represent appellant.
 {¶ 40} Appellant's second assignment of error is not well-taken.
 {¶ 41} Having found that the trial court did not commit error prejudicial to appellant and that substantial justice has been done, the judgment of the Wood County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Handwork, J., Pietrykowski, J., Parish, J. Concur.