DECISION. *Page 2 
{¶ 1} Defendant-appellant, Donald Reckers, appeals convictions arising from two separate, though related, proceedings. In the case numbered C-060451, Reckers appeals the judgment of the Hamilton County Court of Common Pleas convicting him of two counts of felonious assault after a jury trial. In the case numbered C-060640, he appeals the judgment of the Hamilton County Municipal Court convicting him of violating a protection order following a bench trial. We have consolidated the appeals for purposes of this decision.
 THE ASSAULT ON GOLDMAN {¶ 2} Reckers and Janet Picciano were embroiled in an acrimonious divorce. Picciano obtained a protection order requiring Reckers to stay away from her residence and its immediate environs.
 {¶ 3} Early one morning, Picciano's boyfriend, Ben Goldman, was leaving her apartment when he was assaulted from behind. The assailant, who was wearing a ski mask, struck Goldman a number of times with a large flashlight.
 {¶ 4} Eventually, Goldman was able to fend off the attack, and during the struggle, he raised the ski mask over his attacker's face. The attacker fled, and Picciano contacted the police.
 {¶ 5} When the police arrived, they found Goldman bleeding profusely from numerous cuts and abrasions. Goldman immediately identified his attacker as Reckers, whom he had seen on at least two prior occasions. Goldman also identified Reckers from a photographic lineup that the police had shown him soon after the attack. *Page 3 
 {¶ 6} On the day of the assault, Picciano took Goldman to a hospital, where he was treated for his injuries, the most serious of which was a laceration to the back of his head. Medical personnel closed the laceration with three staples, and Goldman testified at trial that a scar or indentation remained on the site of the injury.
 {¶ 7} Reckers maintained his innocence when questioned by police, and he testified at trial that he had been at home when the attack had occurred. The jury returned verdicts of guilty on two counts of felonious assault, and the common pleas court sentenced him to concurrent three-year prison terms.
 {¶ 8} Based on essentially the same evidence, the municipal court found Reckers guilty of violating the protection order and sentenced him to 180 days in jail.
 WEIGHT AND SUFFICIENCY OF THE EVIDENCE {¶ 9} In his first three assignments of error, Reckers now argues that his convictions were based on insufficient evidence and were against the manifest weight of the evidence. We address the three assignments together.
 {¶ 10} In the review of the sufficiency of the evidence to support a conviction, the relevant inquiry for the appellate court "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[1] To reverse a conviction on the manifest weight of the evidence, a reviewing court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving the conflicts in the *Page 4 
evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice.[2]
 {¶ 11} The felonious-assault statute, R.C. 2903.11(A), provides that "[n]o person shall knowingly do either of the following: (1) Cause serious physical harm to another * * *; (2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." Reckers was convicted under both subsections of the statute.
 {¶ 12} In challenging his convictions, Reckers first argues that Goldman's identification testimony was deficient. This argument is without merit. Goldman was familiar with Reckers and immediately identified him as the assailant. Although there were certain inconsistencies in the testimony — such as the color of the ski mask and the extent to which Goldman was able to reveal Reckers's face — we cannot say that the jury lost its way in accepting Goldman's testimony and in rejecting Reckers's assertion that he was elsewhere at the time of the attack.
 {¶ 13} Reckers next argues that the state failed to demonstrate that the flashlight used in the assault was a "deadly weapon" within the meaning of R.C. 2903.11(A)(2). R.C. 2923.11(A) defines a "deadly weapon" as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon."
 {¶ 14} Here, the state presented evidence that Reckers had used a very large metal flashlight as a bludgeon and had repeatedly struck Goldman in the head with *Page 5 
it. The jury's conclusion that the flashlight was a deadly weapon when used in that manner was consistent with Ohio precedent.[3]
 {¶ 15} Reckers next argues that the state failed to demonstrate that Goldman had suffered "serious physical harm" under R.C. 2903.11(A)(1). That term is defined in R.C. 2901.01(A)(5) to include "[a]ny physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity," or "[a]ny physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement."
 {¶ 16} In this case, Goldman suffered numerous cuts and abrasions to his head and face. When the police officers arrived, Goldman was covered in blood, and there was blood splattered in the parking lot and throughout Picciano's apartment. The injuries necessitated treatment at a hospital, where one of the injuries required staples. Goldman testified at trial that a scar or indentation remained on the back of his head at the time of the trial. Under these circumstances, the jury was completely justified in finding that Goldman had suffered "serious physical harm."[4]
 {¶ 17} The convictions for felonious assault were therefore in accordance with the evidence.
 {¶ 18} Reckers also argues that his conviction for violating a protection order was contrary to the evidence. R.C. 2919.27(A)(1) states that "[n]o person shall *Page 6 
recklessly violate the terms of * * * [a] protection order issued or consent agreement approved pursuant to section 2919.26 or 3113.31 of the Revised Code."
 {¶ 19} In the case at bar, it was undisputed that a protection order was in effect and that it covered the area immediately surrounding Picciano's apartment. The only point of contention was whether Reckers was properly identified as the person who had been present in the parking lot. Having held that Goldman's identification testimony was credible with respect to the felonious-assault convictions, we also hold that the conviction under R.C. 2919.27 was proper. We overrule the first, second, and third assignments of error.
 ALLEGED PROSECUTORIAL MISCONDUCT {¶ 20} In the fourth assignment of error, Reckers argues that he was deprived of a fair trial by prosecutorial misconduct. Specifically, he argues that the assistant prosecutor improperly invited the jury to identify or sympathize with the victim when she stated, "If you or a family member got beat down the way he was, you would be excited and upset and hysterical." Reckers also cites a similar comment that the prosecutor made about a juror's family member hypothetically identifying an assailant.
 {¶ 21} To demonstrate prosecutorial misconduct, the defendant must show that the prosecutor's actions were improper and that prejudice arose from the misconduct.[5] Because Reckers did not object to the comments, we review the proceedings for plain error. Under the plain-error standard, we will not reverse in this case unless we are convinced that Reckers would not have been found guilty but for the alleged misconduct.[6] *Page 7 
 {¶ 22} Reckers is correct in stating that a prosecutor may not ask jurors to place themselves in the position of a victim.[7] But in this case, there was no plain error. The prosecutor did not invite the jury to identify emotionally with the victim or to step into the victim's shoes; she merely asked the jury to assess the victim's perceptions and memory in light of his injuries and in light of the fear that such an attack would have engendered. In the context of the argument itself and in the context of the proceedings as a whole, the comments were inconseqential. We overrule the fourth assignment of error.
 SENTENCING {¶ 23} In his fifth and final assignment of error, Reckers argues that the trial court was constitutionally required to sentence him under the law as it existed before the decision of the Supreme Court of Ohio inState v. Foster.[8] We have rejected this argument in State v.Bruce.[9] Because Bruce is controlling authority, we overrule the fifth assignment of error.
 CONCLUSION {¶ 24} We affirm the judgment of the common pleas court in the case numbered C-060451 and the judgment of the municipal court in the case numbered C-060640.
Judgments affirmed.
PAINTER, P. J., and SUNDERMANN, J., concur.
[1] State v. Waddy (1992), 63 Ohio St.3d 424, 430,588 N.E.2d 819.
[2] State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541.
[3] See, e.g., State v. Murray, 11th Dist. No. 2003-L-045,2005-Ohio-1693, at ¶ 27, jurisdictional motion overruled,106 Ohio St.3d 1508, 2005-Ohio-4605, 833 N.E.2d 1250.
[4] See, e.g., State v. Payne (July 20, 2000), 8th Dist No. 76539 (bloody and swollen eye sufficient to establish temporary, serious disfigurement); State v. Henricks, 6th Dist No. WD-05-051,2006-Ohio-6181, jurisdictional motion overruled, 113 Ohio St.3d 1467,2007-Ohio-1722, 864 N.E.2d 653 (small laceration on back of head requiring staples sufficient to establish serious physical harm);State v. Norman, 8th Dist. No. 85938, 2005-Ohio-6018 (numerous facial and neck lacerations with visible scar).
[5] See State v. Lewis, 1st Dist. Nos. C-050989 and C-060010,2007-Ohio-1485, at ¶ 16.
[6] Id.
[7] See, e.g., Cleveland v. Egeland (1986), 26 Ohio App.3d 83, 88,497 N.E.2d 1383.
[8] 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470.
[9] 170 Ohio App.3d 92, 2007-Ohio-175, 866 N.E.2d 44. *Page 1