[Cite as *State v. Warner*, 2022-Ohio-4742.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29498 |
| | : | |
| v. | : | Trial Court Case No. 21CRB552 |
| | : | |
| JOHN M. WARNER | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 29th day of December, 2022.

. . . . . . . . . . .

JOHN D. EVERETT, Atty. Reg. No. 0069911, Prosecuting Attorney, City of Kettering Prosecutor's Office, 2325 Wilmington Pike, Kettering, Ohio 45420
      Attorney for Plaintiff-Appellee

LAURA M. WOODRUFF, Atty. Reg. No. 0084161, 7700 North Main Street, Dayton, Ohio 45415
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

EPLEY, J.

{¶ 1} Defendant-Appellant John M. Warner appeals from his conviction in the Kettering Municipal Court, after he was found guilty of two counts of assault, two counts of domestic violence, and single count of disorderly conduct. For the reasons that follow, the trial court's judgment will be affirmed.

## I.     Facts and Procedural History

{¶ 2} On the evening of December 31, 2020, Barbara Warner ("Barbara"), Warner, and their teenage son went to a party at the home of some friends. Both adults had been drinking alcohol that evening, so when the party wound down around 1:15 a.m., they had a friend drive them home.   They left their vehicles parked near the party.

{¶ 3} Once back at their home, the son went inside, but Warner and Barbara stood in the garage discussing whether Warner should walk back to the party to retrieve his car. Noting the distance he would have to walk, the cold weather, and his current inebriated state, Barbara protested. Warner was, according to Barbara, too intoxicated to safely drive home.

{¶ 4} Barbara then closed the garage door and testified that, despite her concerns, Warner told her "You're not going to stop me" and "You better get out of my way." Trial Tr. at 15. The pair began to argue more with Warner becoming more aggressive, and Barbara recounted that eventually "[h]e got in my face, and he said, 'You're not going to stop me,' and put his hand in my face [and] pointed at me. He was inches from my nose." Trial Tr. at 17. Barbara then slapped Warner across the face with her open right hand. Warner responded by shoving his wife. Barbara told the court that "he grabbed me and

he pushed me, * * * and I fell straight backward square on both of my wrists." Trial Tr. at 18. The impact broke both wrists, leaving them "dangling" and "deformed." She also hit her head on the garage floor.

{¶ 5} With the help of Warner, Barbara made it into the house where their son then tended to her injuries and called for help. Warner was nowhere to be found after that. Barbara was transported to Miami Valley Hospital South, where she underwent emergency surgery and initially spoke with Centerville police officers.

{¶ 6} Officer Benjamin Bishop testified that when he spoke with Barbara at the hospital, she told him that she was not afraid of her husband and that she believed his actions were unintentional. According to Officer Bishop, Barbara also admitted that she had previously smacked Warner to "get his attention." She also expressed to Officer Bishop that she was unsure if charges should be filed.

{¶ 7} After some consideration, Barbara did request that charges be filed against Warner, and on April 28, 2021, he was charged by criminal complaint with multiple misdemeanors: two counts of assault (R.C. 2903.13(A) and (B)), two counts of domestic violence (R.C. 2919.25(A) and (B)), and a single count of disorderly conduct (R.C. 2917.11(B)(2)).

{¶ 8} The case proceeded to a bench trial on March 29, 2022. The State presented five witnesses, and the defense did not call any witnesses. After hearing testimony and considering eight exhibits, the trial court, in a written decision, found Warner did not act in self-defense and was guilty as charged. After merging the assault and domestic violence charges, the State elected to proceed on domestic violence, a first-degree

misdemeanor. On that charge, Warner was sentenced to 180 days in jail (suspended), fined $1,000 with $900 suspended, and placed on probation. He was fined $25 for disorderly conduct, a minor misdemeanor.

{¶ 9} Warner has filed an appeal in which he raises three assignments of error.

## II.    Self-Defense

{¶ 10} In his first assignment of error, Warner argues that the trial court erred in finding that his self-defense claim failed.

{¶ 11} A person may act in self-defense, defense of another, or defense of that person's home. R.C. 2901.05(B)(1). To warrant an instruction of self-defense, there must be evidence presented that supports the conclusion that the defendant used force to defend him or herself. *Id.* If the defendant puts forth evidence that he or she acted in self-defense, the prosecution must prove beyond a reasonable doubt that the accused did not use the force in self-defense. R.C. 2901.05(B)(1); *State v. Lovett*, 2d Dist. Montgomery No. 29240, 2022-Ohio-1693, ¶ 40.

{¶ 12} Self-defense involving the use of *non-deadly* force requires evidence that: (1) the defendant was not at fault in creating the situation giving rise to the altercation; (2) the defendant had reasonable grounds to believe and an honest belief, even if mistaken, that the defendant was in imminent danger of bodily harm; and (3) the only means of protecting himself or herself from that danger was by the use of force not likely to cause death or great bodily harm. *State v. Coleman*, 2d Dist. Montgomery No. 27666, 2018-Ohio-1951, ¶ 13. There is no duty to retreat in cases involving non-deadly force. *State v. Brown*, 2017-Ohio-7424, 96 N.E.3d 1128, ¶ 25 (2d Dist.). Further, a person cannot

provoke a fight or voluntarily enter combat and then claim self-defense. *State v. Wallace-Lee*, 2d Dist. Greene No. 2019-CA-19, 2020-Ohio-3681, ¶ 39.

**{¶ 13}** In its verdict decision, the trial court concluded that Warner could not meet any of the three elements needed to prove self-defense. While we ultimately agree that Warner did not demonstrate that he acted in self-defense, our analysis differs slightly from the trial court's. As to the first element, and based on the record before us, we cannot conclude that Warner created the violent situation. The transcript demonstrates that Barbara and Warner were arguing in the garage about whether Warner should retrieve one of their vehicles that was left at the party; when her husband would not listen to reason, Barbara slapped him across the face. Up to that point, the altercation was purely verbal, but Barbara escalated the situation from a disagreement into a fight. The trial court described the slap as an "act of rudeness or a display of disrespect," and while that may be true, it also raised the stakes. The first element, whether Warner was at fault in creating the situation – he was not – was met.

**{¶ 14}** After Warner was slapped, whether he could have lawfully responded with physicality depended, in part, on whether he believed he was in imminent danger of bodily harm. Warner's problem, though, is that there is virtually nothing in the record to demonstrate or elucidate what he believed at the time. He did not testify, and we have only second-hand testimony that Barbara had previously slapped him to help answer this question. One might speculate based on Barbara's alleged history of being physical with Warner that he could have believed he was in danger, but Warner did not put forth any evidence that showed his mental state (and we cannot put thoughts in his head).

Based on the record before us, the second element, that Warner had an honest belief that he was in imminent danger of bodily harm, was not met, and thus, there is no need to address the third element. Warner's self-defense claim fails, and the first assignment of error is overruled.

### III. Sufficiency of the Evidence

{¶ 15} Warner's second assignment of error asserts that his convictions were not supported by sufficient evidence.

{¶ 16} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Marshall*, 191 Ohio App.3d 444, 2010-Ohio-5160, 946 N.E.2d 762, ¶ 52 (2d Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. The inquiry is whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the elements of the crime proven beyond a reasonable doubt. *Id.* Whether the evidence was legally sufficient to sustain a verdict is a question of law that we will consider de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

Assault

{¶ 17} Warner was charged with two counts of assault – knowing and reckless – in violation of R.C. 2903.13(A) and (B) respectively. R.C. 2903.13(A) states that "[n]o person shall knowingly cause or attempt to cause physical harm to another." A person acts knowingly when, regardless of purpose, he is aware that his conduct will probably

cause a certain result or will probably be of a certain nature. R.C. 2901.22(B). See *State v. Anderson*, 10th Dist. Franklin No. 10AP-302, 2010-Ohio-5561, ¶ 13 ("[A] defendant acts knowingly, when, although not intending the result, he or she is nevertheless aware that the result will probably occur."). Physical harm means any injury regardless of its gravity or duration. R.C. 2901.01(A)(3).

{¶ 18} R.C. 2903.13(B) provides that "no person shall recklessly cause serious physical harm to another." A person acts recklessly when, "with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C). Serious physical harm means any physical harm that involves (1) some permanent incapacity, or temporary, substantial incapacity; (2) permanent disfigurement, or temporary, substantial disfigurement; or (3) acute pain of such a duration as to result in substantial suffering or that involves any degree of prolonged pain. R.C. 2901.01(A)(5)(c)-(e).

{¶ 19} In this case, the parties stipulated at trial that Barbara suffered both physical harm and serious physical harm. The outcome of this assignment of error, therefore, depends on the mens rea.

{¶ 20} At trial, the undisputed evidence showed that Warner and Barbara argued, that she slapped him in the face, he pushed her, and then as a result, Barbara fell backwards, breaking her wrists. There does seem to be dispute, however, around Warner's intentions. At trial, Barbara testified that she believed Warner's actions had been intentional and that he had purposely tried to harm her because he had previously

threatened to kill her. Trial Tr. at 25. Those statements were incongruous with what she purportedly told Officer Bishop at the hospital immediately following the event. Officer Bishop testified that Barbara told him that her husband's actions had not been intentional and that she did not fear him. Trial Tr. at 104.

{¶ 21} The question of whether Warner's actions were intentional goes toward a different, irrelevant mens rea, *purposeful*. Here, we need to decide whether a reasonable fact finder could have reasonably concluded that Warner acted *knowingly* – that he was aware his conduct (pushing Barbara) would probably cause a certain result (injury). We conclude that it was likely that when Warner pushed his wife, he was aware his actions could cause injury, however slight. The statute does not require that he know that his action would cause this particular injury – only that it was likely to cause injury, regardless of its gravity. *See State v. Witt*, 6th Dist. Williams No. WM-04-007, 2005-Ohio-1379, ¶ 27 ("The state was not required to show that appellant knew the specific nature or extent of the injuries that would result."). The evidence presented at trial, taken in the light most favorable to the prosecution, would convince a rational trier of fact that Warner had the requisite mens rea. The guilty finding for assault under R.C. 2903.13(A) was supported by sufficient evidence.

{¶ 22} The trial court's finding that Warner was guilty of assault pursuant to R.C. 2903.13(B) was also supported by the evidence. The parties stipulated that Barbara suffered serious physical harm; to be found guilty the State had to prove that Warner recklessly caused that serious harm. A defendant acts recklessly when he is aware that there is a risk or chance that the result may occur, but nevertheless chooses to engage

in an act and runs the risk. *State v. Edwards*, 83 Ohio App.3d 357, 361, 614 N.E.2d 1123 (10th Dist.1992). "If [the result] is not probable but only possible, the person acts 'recklessly' if he chooses to ignore the risk." *Id*; *State v. Powell*, 11th Dist. Lake No.97-L-130, 1998 WL 682348, *3 (Sept. 25, 1998). In this case, the serious injury that Barbara suffered was not a *probable* outcome of her being shoved by Warner, but certainly *possible*. He ignored the risk and pushed his wife, causing her to fall back and break her wrists. The court's judgment was supported by sufficient evidence.

Domestic Violence

{¶ 23} Warner was also charged with two counts of domestic violence in violation of R.C. 2919.25(A) and (B).

{¶ 24} R.C. 2919.25(A) states that no person shall knowingly cause or attempt to cause physical harm to a family or household member, and R.C. 2919.25(B) notes that no person shall recklessly cause or attempt to cause serious physical harm to a family or household member. Essentially, misdemeanor domestic violence is an assault on a family member. A "family member," as relevant to this case, is "a spouse, a person living as a spouse, or a former spouse of the offender." R.C. 2919.25(F)(1)(a)(i).

{¶ 25} In the previous section we concluded that Warner's guilty findings as to assault were supported by sufficient evidence; thus, we need now only determine if Barbara was a family or household member. At trial, Barbara testified that she and Warner were married on December 30, 2000 and lived together with their children. There is no dispute that Barbara was Warner's spouse at the time of the incident, and consequently, the trial court's judgment as to both domestic violence counts was supported by sufficient

evidence.

<u>Disorderly Conduct (Intoxication)</u>

**{¶ 26}** To be convicted of disorderly conduct under R.C. 2917.11(B)(2), the State must prove that a person, while voluntarily intoxicated, engaged in conduct or created a condition that presented a risk of physical harm to him or herself or another. Therefore, the statute requires (1) voluntary intoxication, and (2) the individual presenting a risk of physical harm. "This second element requires some affirmative showing of dangerousness, as the sole fact that an individual is intoxicated does not give rise to a § 2917.11(B)(2) infraction." *McCurdy v. Montgomery Cty., Ohio*, 240 F.3d 512, 517 (6th Cir.2001).

**{¶ 27}** In this case, four witnesses testified that Warner had been drinking the night of the incident and that the Warner family was driven home because Warner and Barbara were too inebriated to drive. Barbara, specifically, testified that the whole scenario happened because Warner was intoxicated. The first element was met. Barbara's testimony that Warner got aggressive and argumentative, and eventually physical with her, was enough to convince a reasonable fact finder that Warner presented a risk of physical harm. The conviction for disorderly conduct (intoxication) was based on sufficient evidence.

**{¶ 28}** Because all of Warner's convictions were supported by sufficient evidence, his second assignment of error is overruled.

## IV. Manifest Weight of the Evidence

**{¶ 29}** Warner, in his third assignment of error, claims that his convictions were

against the manifest weight of the evidence. We disagree.

{¶ 30} When an appellate court reviews whether a conviction is against the manifest weight of the evidence, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A case should not be reversed as being against the manifest weight of the evidence except "'in the exceptional case in which the evidence weighs *heavily* against the conviction.'" (Emphasis added.) *Id.*

{¶ 31} Here, Barbara testified that after a night of drinking at a friend's party, she, Warner, and their son got a ride home because they were too intoxicated to drive. Once home, she and Warner argued about whether he should walk back to the party to retrieve a car. Concerned about her husband's safety, Barbara strenuously objected, but Warner insisted, telling Barbara "You better get out of my way." Trial Tr. at 15. She then smacked Warner across the face with her open right hand. According to trial testimony, Warner then shoved Barbara, causing her to fall backwards onto the garage floor, resulting in two severely injured wrists.

{¶ 32} Based on the evidence presented at trial, this is not a case in which the jury (or Judge) clearly lost its way, and it is certainly not the exceptional case in which the evidence weighed heavily against the conviction. Warner's convictions were not against

the manifest weight of the evidence, and his third assignment of error is overruled.

### V.      Conclusion

**{¶ 33}** The judgment of the trial court will be affirmed.

. . . . . . . . . . . .

TUCKER, P.J. and WELBAUM, J., concur.


Copies sent to:

John D. Everett
Laura M. Woodruff
Hon. James F. Long