JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant, Antoinette Norman ("Norman"), appeals her conviction for aggravated assault. Finding no merit to the appeal, we affirm.
 {¶ 2} In May 2004, Norman was charged with two counts of felonious assault. The following evidence was presented at her bench trial.
 {¶ 3} In November 2003, the victim, Angelique Tunstull ("Tunstull"), drove her daughter to school. As she was opening the door to let her daughter out of the car, Norman and her sister, Shanica Norman ("Shanica"), approached and attacked Tunstull. The women knew each other because Tunstull was dating the father of Norman's child. Tunstull testified that the two women were on top of her, hitting her as she laid across the front seat. Tunstull testified that Shanica pulled out a small knife, described as a pocketknife with a small blade that could be flipped up, similar to a nail file. Tunstull stated that Shanica cut her in the face with the knife and then passed the knife to Norman, who also cut Tunstull's face. According to Tunstull, the women were pulling her from the car when someone shouted that he was a police officer.
 {¶ 4} Michael Bearden ("Bearden"), testified that upon seeing the women fighting, he approached the scene and ordered them to stop. He identified himself as a police officer, although he is not a commissioned officer. He testified that he witnessed two women attacking another woman. Bearden also observed blood on Tunstull's head.
 {¶ 5} Officer Erin O'Donnell testified that Tunstull had several bloody scratches on her face. She further testified that no weapon was found on either Norman or her sister or in the area.
 {¶ 6} Norman testified that she approached Tunstull with the intention of telling her to stop calling and threatening her. According to Norman, words were exchanged and they began fighting. Norman admitted that her sister also attacked Tunstull. Norman denied using a weapon to cut Tunstull, but admitted that she may have inadvertently scratched her with her long fingernails.
 {¶ 7} As a result of the altercation, Tunstull suffered injury to her face. She was treated at University Hospitals for facial and neck lacerations and abrasions. Although her injury did not require stitches, the hospital referred her to a plastic surgeon if the lacerations did not completely heal. At trial, Tunstull still had a scar on her face from the injury.
 {¶ 8} At the close of the State's case, the court dismissed count two, felonious assault with a deadly weapon. The court found Norman guilty of the lesser included offense of aggravated assault and sentenced her to one year of community control sanctions. Norman appeals her conviction, raising two assignments of error, which will be addressed together.
 Sufficiency and Manifest Weight of the Evidence {¶ 9} In her first assignment of error, Norman argues that the State failed to present sufficient evidence to sustain her conviction for aggravated assault. In her second assignment of error, Norman argues that her conviction is against the manifest weight of the evidence. Although these arguments involve different standards of review, we consider them together because we find the evidence in the record applies equally to both.
 {¶ 10} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the State has met its burden of production at trial. State v. Thompkins, 78 Ohio St.3d 380, 390,1997-Ohio-52, 678 N.E.2d 541. On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 11} In evaluating a challenge to the verdict based on manifest weight of the evidence, a court sits as the thirteenth juror, and intrudes its judgment into proceedings that it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury that has "lost its way." Thompkins, supra at 387. As the Ohio Supreme Court declared:
"Weight of the evidence concerns `the inclination of the greater amountof credible evidence offered in a trial, to support one side of the issuerather than the other. It indicates clearly to the jury that the partyhaving the burden of proof will be entitled to their verdict, if, onweighing the evidence in their minds, they shall find the greater amountof credible evidence sustains the issue which is to be established beforethem. Weight is not a question of mathematics, but depends on its effectin inducing belief.' * * *
 The court, reviewing the entire record, weighs the evidence and allreasonable inferences, considers the credibility of witnesses anddetermines whether in resolving conflicts in the evidence, the juryclearly lost its way and created such a manifest miscarriage of justicethat the conviction must be reversed and a new trial ordered. Thediscretionary power to grant a new trial should be exercised only in theexceptional case in which the evidence weighs heavily against theconviction." Id.
 {¶ 12} We recently stated in State v. Bruno, Cuyahoga App. No. 84883, 2005-Ohio-1862, that the court must be mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact. A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the prosecution proved the offense beyond a reasonable doubt. State v.DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus; State v. Eley (1978), 56 Ohio St.2d 169, 383 N.E.2d 132. Moreover, in reviewing a claim that a conviction is against the manifest weight of the evidence, the conviction cannot be reversed unless it is obvious that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Garrow (1995), 103 Ohio App.3d 368,370-371, 659 N.E.2d 814.
 {¶ 13} Norman was convicted of aggravated assault pursuant to R.C. 2903.12, which provides that:
"(A) No person, while under the influence of sudden passion or in asudden fit of rage, either of which is brought on by serious provocationoccasioned by the victim that is reasonably sufficient to incite theperson into using deadly force, shall knowingly:
 "(1) Cause serious physical harm to another or to another's unborn; * ** "
 {¶ 14} In the instant case, Norman testified that she approached Tunstull to complain about the threatening phone calls Tunstull was allegedly making to her. Words were "exchanged" and then she and Tunstull began fighting. At some point, Shanica became involved and attacked Tunstull. As a result of the altercation, Tunstull sustained facial and neck lacerations and abrasions. Tunstull was treated in the emergency room for her injuries.
 {¶ 15} Norman claims that although she may have scratched Tunstull, her actions did not cause serious physical harm to Tunstull. We disagree.
 {¶ 16} Serious physical harm is defined in R.C. 2901.01(A):
"(5) `Serious physical harm to persons' means any of the following:
• * *
"(d) Any physical harm that involves some permanent disfigurement orthat involves some temporary, serious disfigurement; * * * "
 {¶ 17} Whether an injury constitutes serious physical harm under subsection (d) has been subject to interpretation by this court. In Statev. Whittsette, Cuyahoga App. No. 85478, 2005-Ohio-4824, this court held that gashes on the victim's head caused by being struck with a gun were sufficient for serious physical harm. In State v. Davis (May 24, 1984), Cuyahoga App. No. 47622, this court held that the loss of a permanent front tooth was sufficient to constitute serious physical harm. However, this court has also held that a swollen ear and a 1.5 centimeter cut over the victim's eyebrow, which caused a scar, did not constitute serious physical harm. State v. Enovitch (Aug. 20, 1998), Cuyahoga App. No. 72827.
 {¶ 18} Other courts have also interpreted this subsection. A cut on the victim's chin, causing a scar, and cartilage dislocation in his ear was sufficient to constitute serious physical harm. State v. Darden
(Apr. 1, 1992), Lorain App. No. 91CA005131. In State v. Edwards (1992),83 Ohio App.3d 357, 614 N.E.2d 1123, the court held that serious physical harm was proven when records revealed that a two-centimeter cut above the victim's eye caused a permanent scar. The court found this to be "some permanent disfigurement." Id. at 360. However, in In the Matterof Delayn K. (Dec. 15, 2000), Huron App. No. H-00-029, the court found that scratches, without the need for stitches and absent any medical evidence regarding severity, was insufficient to establish serious physical harm.
 {¶ 19} We find that Tunstull's injuries constituted serious physical harm. At trial, which was one year after the assault, Tunstull still had a scar on her face due to the injuries sustained. This facial scar is sufficient for serious physical harm. Although we note that our holding is contrary to that in Enovitch, we find that case distinguishable.
 {¶ 20} In Enovitch, this court reasoned:
"Other than [the victim's] statement, there was no evidence at trialthat the scar above his eye was permanent. There is no evidence as to whotold him the scar would not go away or that the person was qualified tomake such a determination. The hospital records described his injury asjust over 1.5 centimeters in length and as a `burst-type injury, clean,shallow, not particularly jagged.' The hospital discharge instructionscharacterized the injury as `minor.'"
 {¶ 21} However, in the instant case, medical evidence was presented along with Tunstull's testimony that the injuries may cause permanent scarring. Tunstull testified and showed the court that she still had one visible scar. She also testified that hospital personnel told her that one laceration may leave a scar and referred her to a plastic surgeon "if all the marks didn't clear up very well." The medical records corroborated this testimony. Tunstull's discharge instructions included the following special notes: "[F]ollow up with Plastics 844-4780." Therefore, we find that Tunstull's injuries were sufficient to constitute serious physical harm because of permanent disfigurement.
 {¶ 22} Nevertheless, even if Tunstull's injuries were not considered permanent disfigurement, we would find that they were a "temporary, serious disfigurement." R.C. 2901.01(A)(5)(d).
 {¶ 23} In State v. Payne (July 20, 2000), Cuyahoga App. No. 76539, this court held that a bloody cut and a swollen eye were sufficient to establish serious physical harm because the injuries were a temporary, serious disfigurement. Here, Tunstull sustained at least seven facial and neck lacerations and abrasions. One scar was still visible a year after the assault. Tunstull also missed two days' work due to her injuries. We find that her injuries were sufficient to constitute serious physical harm because a temporary, serious disfigurement was shown.
 {¶ 24} Therefore, we find that there was sufficient evidence to support Norman's conviction for aggravated assault. We also find that her conviction was not against the manifest weight of the evidence.
 {¶ 25} Accordingly, the assignments of error are overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Frank D. Celebrezze, Jr., P.J. and Mary Eileen Kilbane, J. Concur