JOURNAL ENTRY AND OPINION
{¶ 1} In these consolidated cases, defendant Michael Smith appeals from the trial court's denial of his motion to withdraw his guilty plea to attempted aggravated burglary and attempted felonious assault, and also appeals from his conviction for felonious assault. For the reasons set forth below, we affirm defendant's convictions but reverse and remand for resentencing in both cases.
 {¶ 2} On June 28, 2005, defendant was indicted in Case No. 467634 for aggravated burglary and felonious assault in connection with the June 8, 2005 attack on Stephen Paulo. He pled not guilty but later entered into a plea agreement with the state whereby he pled guilty to reduced charges of attempted aggravated burglary and attempted felonious assault. Prior to sentencing, defendant moved to disqualify his counsel and to withdraw his guilty pleas. Following a hearing, the trial court denied both motions. Defendant was later sentenced to six years of imprisonment plus three years of post release control.
 {¶ 3} On August 15, 2005, defendant was indicted in Case No. 469626 for felonious assault and co-defendant Leslie Shiflett was indicted for obstructing justice in connection with the March 24, 2005 attack on Yasser Jawhari at a convenience store. Shiflett subsequently pled guilty to a reduced charge of attempted obstruction of justice and agreed to testify against defendant. The matter as to defendant proceeded to trial to the court on October 25, 2005. The state presented the testimony of Yasser Jawhari, Leslie Shiflett, Stephen Paulo and Cleveland Police Det. David Borden.
 {¶ 4} Yasser Jawhari testified that he was working at a convenience store in Starkweather Avenue in Cleveland. Leslie Shifflett entered the store. She was intoxicated and belligerent. She attempted to buy beer. She began to throw bottles around. Jawhari asked her several times to leave the store. She slammed the door as she left and the door did not close properly. Jawhari exited the store to close the door and to again tell Shiflett to leave. He had a broom in his hand. Shiflett entered a car parked nearby. Defendant exited the same car and attacked Jawhari from behind.
 {¶ 5} Defendant threw Jawhari to the floor and stomped and beat him. He grabbed Jawhari by the head and repeatedly slammed him into a piece of metal. A woman was in the store but she appeared afraid to intervene. A second customer entered the store and defendant fled. Jawhari's co-worker called police.
 {¶ 6} Jawhari sustained injuries to his head, eye, neck, nose and face. He went to the hospital three days later. He displayed a scar to his head to the court. He stated that he still experiences pain from the attack and that every time he moves his jaw, his temple hurts. He was dizzy for nearly ten days after the attack and had a headache for one month.
 {¶ 7} Jawhari provided police with a surveillance tape of the incident. He later identified one of the men who waited in the car from a photo array, and also identified Shiflett. Approximately two months later, he identified defendant as his assailant from another photo array.
 {¶ 8} Jawhari denied that he threatened or attacked Shiflett with the broom. He also indicated that the hospital records incorrectly state that three individuals assaulted him. He did not receive further treatment for his injuries. Shiflett testified that she, defendant, "John Boy" and another individual were together earlier that day drinking beer. She stated that the alcohol interacted with other medication that she takes and she became delusional. She went to the convenience store to buy beer. The clerk asked her to leave and as she did so, defendant charged at the man and assaulted him. Shiflett testified that, although the clerk held a broom, he did not hit
her with it and did not threaten her. Shiflett also stated that defendant lost his glasses at the scene.
 {¶ 9} Det. Borden interviewed Shiflett and she initially stated that the two other men, and not defendant, assaulted Jawhari. She stated that she was defendant's girlfriend and she was trying to protect him. Defendant later turned himself in to police and she then made a second statement which implicated him.
 {¶ 10} Shiflett admitted that she told police that Jawhari chased her out of the store and that she was pregnant with defendant's child at the time of the incident.
 {¶ 11} Stephen Paulo testified that he lives in the same apartment building as defendant and Shiflett. According to Paulo, defendant told him about the incident at the store and said that he "beat up on the guy."
 {¶ 12} Det. Borden testified that he eventually learned that the suspects' names were "John Boy, Michael and Kenny." He showed Jawhari a photo array and he identified Shiflett and John Verassi, who were both then indicted. He subsequently spoke to Paulo and learned that defendant and not Verassi was the assailant. Jawhari identified defendant from a second photo array.
 {¶ 13} Defendant was later indicted in connection with the attack on Paulo. Det. Borden testified that following this indictment, defendant called him and stated that he, and not Shiflett or Verassi, had assaulted the store owner, but that he was not guilty of burglary of Paulo's residence. Defendant provided additional details of the assault in a second unsolicited telephone call to Det. Borden.
 {¶ 14} Defendant elected to present evidence. He testified on his own behalf and also presented the testimony of John Verassi.
 {¶ 15} Verassi testified that he was originally indicted for felonious assault in connection with the attack on Jawhari but the indictment was later dismissed.Defendant testified that Jawhari chased Shiflett out of the store and swung the broom at her. He punched Jawhari and the two began to wrestle. He testified that he is protective of Shiflett because she has a mental disability and she was pregnant with his child. He viewed the surveillance video but he did not recall repeatedly striking Jawhari as he lay on the ground.
 {¶ 16} The trial court subsequently convicted defendant of felonious assault and sentenced him to a term of seven years of imprisonment, to run concurrent to his sentence in Case No. 467634.
 {¶ 17} Defendant now appeals from both matters.
 1. Case No. 467634 {¶ 18} Within this appeal, defendant asserts that the trial court erred in denying his motion to withdraw his guilty plea which was made prior to sentencing.
 {¶ 19} Crim.R. 32.1 provides:
 {¶ 20} "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."
 {¶ 21} A motion made pursuant to Crim.R. 32.1 is addressed to the sound discretion of the trial court and will not be overturned on appeal absent an abuse of that discretion. State v. Smith (1977),49 Ohio St.2d 261, 361 N.E.2d 1324, paragraph two of the syllabus; State v.Stumpf (1987), 32 Ohio St.3d 95, 104, 512 N.E.2d 598. "The term 'abuse of discretion' connotes more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140.
 {¶ 22} A trial court does not abuse its discretion in overruling a motion to withdraw (1) where the accused is represented by highly competent counsel, (2) where the accused was afforded a full hearing, pursuant to Crim.R. 11, before he entered the plea, (3) when, after the motion to withdraw is filed, the accused is given a complete and impartial hearing on the motion, and (4) where the record reveals that the court gave full and fair consideration to the plea withdrawal request. State v. Peterseim (1980), 68 Ohio App.2d 211, 428 N.E.2d 863, paragraph three of the syllabus.
 {¶ 23} We find no abuse of discretion in this case. The trial court determined that defendant was represented by competent counsel at the plea proceedings. The court also determined that it had afforded defendant a full hearing pursuant to Crim.R. 11, before he entered the plea. Thereafter, the trial court held a complete and impartial hearing on the motion, and gave full and fair consideration to the plea withdrawal request and the arguments raised therein. Upon our review of the record, we find that the court complied with the requirements set forth in State v. Peterseim, supra, and did not abuse its discretion in denying the motion for withdrawal of the guilty plea.
 {¶ 24} This assignment of error is overruled.
 {¶ 25} Defendant next asserts that he must be resentenced in accordance with the Supreme Court's decision in State v. Foster,109 Ohio St. 3d 1, 2006-Ohio-856,845 N.E.2d 470. In Foster, the Court determined that sentencing statutes which provide for judicial fact-finding violate the accused's right to a jury trial as set forth inApprendi v. New Jersey (2000), 530 U.S. 466, 120 S.Ct. 2348,147 L.Ed.2d 435, and Blakely v. Washington (2004), 542 U.S. 296, 124 S.Ct. 2531,159 L.Ed.2d 403. The court severed parts of various statutes, including R.C.2929.14(B)(2) which required judicial factfinding before a trial court may impose more than a minimum term of imprisonment and the defendant has never previously been imprisoned. As a result, trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or state reasons for imposing maximum, consecutive, or more than the minimum sentences.Foster, supra.
 {¶ 26} Further, a defendant who was sentenced under the unconstitutional and now void statutory provisions must be resentenced. Id.
 {¶ 27} In accordance with the foregoing, this assignment of error is well-taken. Defendant's conviction is affirmed but the sentence is vacated and the matter is remanded for resentencing.
 2. Case No. 469626 {¶ 28} For his first assignment of error, defendant complains that his conviction is unsupported by sufficient evidence because there was no proof of serious physical harm.
 {¶ 29} "Sufficiency of the evidence" is "'a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" State v. Thompkins,78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541, quoting Black's Law Dictionary (6th Ed. 1990) 1433. The relevant inquiry when determining whether the evidence is sufficient to support the verdict "is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 30} The elements of felonious assault are set forth in R.C.2903.11(A)(1) which provides:
 {¶ 31} "No person shall knowingly * * * cause serious physical harm to another."
 {¶ 32} "Serious physical harm" is defined as in R.C. 2901.01(E) as follows:
 {¶ 33} "(1) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 {¶ 34} "(2) Any physical harm which carries a substantial risk of death;
 {¶ 35} "(3) Any physical harm which involves some permanent incapacity, whether partial or total, or which involves some temporary, substantial incapacity;
 {¶ 36} "(4) Any physical harm which involves some permanent disfigurement, or which involves some temporary, serious disfigurement;
 {¶ 37} "(5) Any physical harm which involves acute pain of such duration as to result in substantial suffering, or which involves any degree of prolonged or intractable pain."
 {¶ 38} Here, defendant insists that there is insufficient evidence of serious physical harm. This contention is without merit. As we noted previously, Jawhari sustained injuries to his head, eye, neck, nose and face. He went to the hospital three days later and had a scar on his head from the beating. Jawhari also testified that he still experiences pain from the attack and that every time he moves his jaw, his temple hurts. He was dizzy for nearly ten days after the attack and had a headache for one month. The photographs depict a huge lump on the side of Jawhari's head, eye trauma, numerous lacerations to his face, neck and ear, and show considerable blood on the ground. This is sufficient to establish the element of serious physical harm. At minimum, Jawhari suffered "temporary, serious disfigurement." R.C. 2901.01(A)(5) SeeState v. Norman, Cuyahoga App. No. 85938, 2005-Ohio-6018. No rational trier of fact could have failed to find serious physical harm in this instance.
 {¶ 39} Defendant next complains that his conviction is against the manifest weight of the evidence.
 {¶ 40} When assessing whether a conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and ultimately determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997),78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541; Id., quoting State v.Martin (1983),
20 Ohio App.3d 172, 175, 485 N.E.2d 717. An appellate court should reserve
reversal of a conviction as being against the manifest weight of the evidence for only the most "exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 41} In this matter, we cannot conclude that the jury lost its way. The undisputed evidence indicated that defendant attacked Jawhari and that Jawhari sustained injuries to his head, eye, neck, nose and face. Defendant claimed that Jawhari swung a broom at Shiflett, who was pregnant, and that he and Jawhari then wrestled. However, the evidence indicated that Jawhari swung the broom after Shiflett had left and by no means supports the claim that defendant and Jawhari "wrestled."
 {¶ 42} Defendant next asserts that he must be resentenced in accordance with State v. Foster, supra, and that he can only receive the minimum sentence.
 {¶ 43} As noted previously, in accordance with the Supreme Court's holding in State v. Foster, "Trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Foster, syllabus. "While the defendants may argue for reductions in their sentences, nothing prevents the state from seeking greater penalties." Id. at P105.
 {¶ 44} Later, in State v. Mathis, 109 Ohio St. 3d 54, 2006-Ohio-855,846 N.E.2d 1, the Court explained that the trial court is to conduct a resentencing hearing de novo and in exercising its discretion the court must carefully consider the statutes that apply to every felony case. Those include R.C. 2929.11, which specifies the purposes of sentencing, and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender. In addition, the sentencing court must be guided by statutes that are specific to the
case itself. Id.
 {¶ 45} This Court has rejected defendants' claims that they must receive a minimum term upon resentencing. See State v. Osborn, Cuyahoga App. No. 86314, 2006-Ohio-2878. Accord State v. Smith, Montgomery App. No. 21004, 2006-Ohio-4405 (appellate panel "will not direct the trial court to enter a specific sentence on remand.")
 {¶ 46} In accordance with the foregoing, defendant must be resentenced but we will not direct the lower court to impose a specific sentence on remand.Convictions affirmed, sentences vacated and remanded for resentencing.
It is ordered that appellee and appellant split the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the
common pleas court to carry this judgment into execution. The defendant's
conviction having been affirmed, any bail pending appeal is terminated. Case
remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27
of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, J., and MARY EILEEN KILBANE, J., CONCUR